# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### February 8, 2017 Session Heard at Nashville

## DERRICK HUSSEY ET AL. v. MICHAEL WOODS ET AL.

### Appeal by Permission from the Court of Appeals
### Circuit Court for Shelby County
### No. CT-00564209    Donna M. Fields, Judge

### No. W2014-01235-SC-R11-CV

Tennessee Rule of Civil Procedure 60.02 allows a trial court to set aside a final judgment under certain circumstances, including when the judgment is void or "for any other reason justifying relief." Here, a decedent's mother, in her capacity as her unmarried son's next of kin, filed a lawsuit seeking damages for his wrongful death. The case was settled and dismissed. Nearly twenty months later, the decedent's alleged minor child filed a Rule 60.02 motion to set aside the order of dismissal and to be substituted as the plaintiff. The motion asserted that the child was the decedent's next of kin and the proper party to pursue the wrongful death claim, based on the decedent's execution of an acknowledgment of paternity and a Mississippi trial court order for support. The trial court denied the motion, finding it was not timely filed. The Court of Appeals vacated the trial court's ruling, holding that the Rule 60.02 motion was not ripe for adjudication until the trial court conclusively established the child's paternity. We find the Court of Appeals erred by focusing on issues surrounding the child's paternity rather than reviewing the correctness of the trial court's ruling on the Rule 60.02 motion. We hold that the trial court properly denied relief under Rule 60.02. The judgment of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the
### Court of Appeals Reversed

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Rachael E. Putnam and Austin T. Rainey, Memphis, Tennessee, for the appellant, Sharondra E. Harris.

Van D. Turner, Jr., Memphis, Tennessee, for the appellee, Estate of Mae L. Chearis.

Leland M. McNabb and Pamela Warnock Blair, Memphis, Tennessee, for the appellee, Family Dollar Stores of Tennessee, Inc.

Darrell J. O'Neal, Memphis, Tennessee, Pro Se, Administrator of the Estate of Mae L. Chearis, Deceased.

## OPINION

### I.

In December 2003, Sharondra Harris and Derrick Hussey began dating. On April 28, 2005, Ms. Harris gave birth to a child. Subsequently, the Mississippi Department of Human Services sued Mr. Hussey in the Chancery Court of DeSoto County, Mississippi, to establish paternity and support for the child. On March 7, 2008, Mr. Hussey signed an agreement admitting that he was the natural father of the child, waiving his rights to genetic testing, and agreeing to pay support. By order dated March 20, 2008, the chancery court approved the agreement and ordered that Mr. Hussey was the father of the child. Thereafter, the chancery court entered an amended judgment for support and an amended order of withholding.

On December 4, 2008, Mr. Hussey died after being detained and handcuffed by the manager of a Family Dollar store in Memphis. At the time of his death, Mr. Hussey was not married and was living with his mother, Mae L. Chearis. On December 9, 2008, Ms. Chearis and her sister, Marilyn Ramson, met with attorney Robert M. Brannon, Jr., to discuss a wrongful death suit. Ms. Chearis signed an agreement retaining Mr. Brannon to handle a wrongful death claim against the Family Dollar store and its manager. On December 10, 2008, at Mr. Brannon's request, Ms. Chearis and Ms. Harris met with Mr. Brannon. At that meeting, Ms. Harris signed an agreement retaining Mr. Brannon to represent Ms. Harris and Mr. Hussey's minor child in a wrongful death suit against the Family Dollar store.

After Mr. Brannon was hired, some members of Mr. Hussey's family questioned whether Mr. Hussey was the child's biological father. On January 2, 2009, Mr. Brannon wrote a letter to Ms. Ramson who, according to Mr. Brannon and Ms. Chearis, had been designated as the contact person for Mr. Hussey's family. In the letter, Mr. Brannon offered to perform legal services regarding the paternity issue based on his previous telephone conversation with Ms. Ramson about the child's paternity. On March 18, 2009, Mr. Brannon sent Ms. Ramson an update on the case and requested payment of an

2

investigator's fee. On July 27, 2009, Mr. Brannon notified Ms. Ramson by letter that he was declining representation in the wrongful death claim and closing his file.

In November 2009, Ms. Chearis, without the involvement or knowledge of Ms. Harris, retained lawyers with the Memphis law firm of Porter & Strange, PLLC, to handle the wrongful death claim. On December 3, 2009, Ms. Chearis, through her new lawyers, filed a wrongful death suit, as mother and next of kin of Mr. Hussey, against Family Dollar Stores of Tennessee, Inc., and Michael Woods, the manager of the store where Mr. Hussey died. Several months later, Ms. Chearis and Family Dollar agreed to a settlement, the terms of which were confidential, and Family Dollar paid Ms. Chearis the settlement funds. On March 22, 2010, Ms. Chearis, as the "sole heir at law of Derrick Hussey," signed a release of liability for Family Dollar and the store manager. On March 31, 2010, the trial court entered a consent order of dismissal with prejudice.

On December 2, 2011—twenty months after entry of the order of dismissal—the minor child, through his mother, moved to set aside the order under Tennessee Rule of Civil Procedure 60.02, to be substituted as the real party in interest under Rule 17.01,[1] and to allow the claim to relate back to the filing of the original complaint under Rule 15.03. The child asserted that he was the decedent's next of kin based on Mr. Hussey's signed admission of paternity filed in the Chancery Court for DeSoto County, Mississippi. The child further argued that he was the real party in interest; the lawful beneficiary with statutory priority over Mr. Hussey's mother; and the only party with standing to bring, settle, and/or dismiss the wrongful death lawsuit.

According to Ms. Harris's deposition testimony, she and Mr. Hussey met in November 2003 and began dating each other exclusively. Ms. Harris became pregnant and, on April 28, 2005, gave birth in Mississippi. Mr. Hussey was present for the child's birth. Ms. Harris did not recall the date of the child's conception but acknowledged that Mr. Hussey was incarcerated from July to August 2004.[2] Ms. Harris could not recall the child's due date but remembered that he was born early and weighed only four pounds. Ms. Harris denied that she dated any other men during the time when the child was conceived. The couple separated in 2007 but remained friends, with Mr. Hussey dividing his time between Ms. Harris's home and his mother's home. Mr. Hussey was not

---

[1] Rule 17.01 of the Tennessee Rules of Civil Procedure provides in part: "Every action shall be prosecuted in the name of the real party in interest . . . . and . . . ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Tenn. R. Civ. P. 17.01.

[2] According to Tipton County Sheriff's Office records, Mr. Hussey was in jail from July 23, 2004, through August 25, 2004.

3

employed and did not pay Ms. Harris child support. After Ms. Harris returned to work, the child attended daycare. Ms. Harris frequently worked overtime, and the child spent nights at both Ms. Chearis's home and Ms. Harris's home. Ms. Chearis assisted with the child's care, and he called her "Granny." Ms. Harris never heard Ms. Chearis express any doubts about the child's paternity. Following Mr. Hussey's death, she and the child visited Ms. Chearis's home on or the day after Christmas 2008. Subsequently, Ms. Harris attempted to contact Ms. Chearis, but her telephone number had been changed.

After meeting with Mr. Brannon on December 10, 2008, and signing an attorney representation agreement, Ms. Harris had no further contact with Mr. Brannon. Ms. Harris changed her address at some point after the meeting with Mr. Brannon but had her mail forwarded to her new address. To her knowledge, she received all of her mail but received nothing from Mr. Brannon. She called Mr. Brannon's office twice in 2009 and left a message with her new phone number but received no response. Ms. Harris did not go to Mr. Brannon's office to check the status of the case. She denied that Ms. Ramson was designated as the family contact with Mr. Brannon. From December 2008 through October 2011, Ms. Harris believed Mr. Brannon was representing her despite his lack of communication with her. In November 2011, Ms. Harris contacted a legal aid office and, after meeting with a lawyer, learned about Ms. Chearis's lawsuit. On December 2, 2011, Ms. Harris, through counsel and on behalf of her son, moved to set aside the order of dismissal under Rule 60.02 of the Tennessee Rules of Civil Procedure.

In response to the child's motion, Family Dollar and Ms. Chearis asserted that the motion was not filed within a reasonable time, and in any event, there was no basis for relief under Rule 60.02. According to Ms. Chearis, after a question arose regarding the child's paternity, Ms. Harris severed her ties with Mr. Hussey's family, and they could not contact her. Ms. Chearis testified by deposition that before her son died, she had doubts about the child's paternity based on her son's statement that he was "tricked" into signing the paternity agreement and because he was in jail when the child was conceived. Ms. Chearis said she loved the child and accepted him as her grandson. She stated that neither she nor her son took care of the child, but the child visited in her home "every now and then," although not every week. Mr. Hussey's obituary, prepared by Ms. Chearis's sister, Linda Jamerson, stated: "Derrick leaves to cherish his memories a son,[3] . . . a loving mother, Mae Lois Chearis," his father, two brothers, a grandmother, nieces and nephews, "a special friend, [Sharondra] Harris," and "a host of uncles, aunts, cousins, and other family and friends."

Ms. Chearis said that, after learning that Mr. Brannon was no longer handling the wrongful death case, she attempted unsuccessfully to notify Ms. Harris of Mr. Brannon's

---

[3] We have omitted the minor child's name.

decision. In November 2009, Ms. Chearis retained lawyers with Porter & Strange, PLLC to represent her in a wrongful death case. Ms. Chearis, through her new lawyers, filed suit as the "natural mother and next of kin" of Mr. Hussey one day before the statute of limitations expired.

In January 2012, the child filed with the trial court a copy of the Mississippi paternity order and the acknowledgment of paternity signed by Mr. Hussey. In April 2012, Ms. Chearis moved the trial court to order DNA testing to establish the child's paternity. The child opposed the motion, arguing that the Mississippi acknowledgment of paternity and trial court order were entitled to full faith and credit in the trial court.

The case took a detour after Ms. Chearis filed a petition in June 2012 in the Shelby County Probate Court to open Mr. Hussey's estate and appoint an administratrix.[4] In August 2012, Ms. Harris, as the parent, natural guardian, and next friend of the child, filed a petition to intervene in the probate case. In September 2012, the trial court stayed its proceedings based on the probate court's original and exclusive jurisdiction regarding the determination and priority of heirs in an intestate estate. In December 2013, the probate court granted full faith and credit to the Mississippi trial court order and declared that the child was Mr. Hussey's only living child, was the sole beneficiary of his estate, and had priority over all other heirs.

The trial court denied the child's Rule 60.02 motion based on the untimeliness of the motion and the inequities of setting aside the order of dismissal and subjecting Family Dollar to additional litigation and expense after payment of the settlement to Ms. Chearis. Although the reasonableness of the settlement was not at issue and the amount of the settlement was not in evidence, the trial court described the settlement as "amazingly, phenomenally . . . mind-boggling generous."

Ms. Harris appealed. The Court of Appeals vacated the trial court's decision, ruling that the Rule 60.02 motion was not ripe for adjudication until the trial court, not the probate court, conclusively established the child's paternity. *See Hussey v. Woods*, No. W2014-01235-COA-R3-CV, 2015 WL 5601777, at *1 (Tenn. Ct. App. Sept. 23, 2015) *perm. app. granted* (Tenn. May 9, 2016). The Court of Appeals reasoned that the sole question before the trial court was whether the child or Ms. Chearis had the right to bring the wrongful death lawsuit and that this question should have been answered by the trial court after deciding the child's paternity. The Court of Appeals vacated the trial

---

[4] Ms. Chearis died on September 5, 2012. In December 2012, the probate court opened an estate for Ms. Chearis and appointed an administrator to handle the estate. In March 2017, a successor administrator was appointed.

court's order and remanded the case for further proceedings without reviewing the merits of the Rule 60.02 motion.

We granted the child's application for permission to appeal and directed the parties to address whether the trial court, under Tennessee Rule of Civil Procedure 60.02(3) or 60.02(5), properly denied the motion for relief from the settlement and order of dismissal.

## II.

At this stage in the proceedings, questions regarding the child's paternity and whether he or his grandmother had priority to bring the wrongful death suit are not determinative. These issues may have been relevant at the outset of the litigation, but the wrongful death case has been settled and dismissed. The order of dismissal is a hurdle that the child, through Ms. Harris as his next friend, must overcome before any other issues can be considered.[5] Therefore, the only issue in this appeal is whether the trial court properly denied the Rule 60.02 motion to set aside the order of dismissal under either 60.02(3) or 60.02(5). The Court of Appeals erred by focusing on the issues surrounding the child's paternity and by failing to address the merits of the Rule 60.02 motion.

A judgment or order of final disposition that adjudicates the rights and claims of all the parties to an action becomes final thirty days after it is entered. *See* Tenn. R. Civ. P. 58, 59; *see also* Tenn. R. Civ. P. 54; Tenn. R. App. P. (3)(a); *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 133 (Tenn. 2013). Within thirty days of entry of an order, a party may seek relief from the order by filing a motion under Tennessee Rule of Civil Procedure 59.02. *Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012). A party who waits more than thirty days after entry of an order to seek relief must do so under Rule 60.02. *Id.* (citing *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977)).

Rule 60.02 allows relief from a final order under limited circumstances. The general purpose of Rule 60.02 is "to alleviate the effect of an oppressive or onerous final judgment." *Black v. Black*, 166 S.W.3d 699, 703 (Tenn. 2005) (quoting *Killion v. Dep't of Human Servs.*, 845 S.W.2d 212, 213 (Tenn. 1992)) (internal quotation marks omitted). Rule 60.02 aims "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Relief under Rule

---

[5] Under Rule 17.03, "[w]henever an infant . . . has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant . . . . If an infant . . . does not have a duly appointed representative, or if justice requires, he or she may sue by next friend." Tenn. R. Civ. P. 17.03.

6

60.02 is not available to a party whose circumstances change after entry of the judgment or to a party "dissatisfied with a particular outcome." *Furlough*, 397 S.W.3d at 127–28 (Tenn. 2013) (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 336 (Tenn. 2010)) (internal quotation marks omitted). Rule 60.02 is "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). This escape valve "should not be easily opened." *Furlough*, 397 S.W.3d at 127 (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)) (internal quotation marks omitted).

Rule 60.02 provides that after an order is final, a court may relieve a party from a final judgment "[o]n motion and upon such terms as are just," based on the following grounds:

> (1) mistake, inadvertence, surprise or excusable neglect;
> (2) fraud . . . , misrepresentation, or other misconduct of an adverse party;
>     (3) the judgment is void;
> (4) the judgment has been satisfied, released or discharged . . . or
> (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02. Motions made under Rule 60.02 must be filed within a "reasonable time," except that motions brought under subsections (1) and (2) must be filed within one year after entry of the judgment. *Id.* Motions under subsection (3) are not subject to the reasonable time filing requirement, but relief "may be denied if certain exceptional circumstances exist." *Turner v. Turner*, 473 S.W.3d 257, 279 (Tenn. 2015).

To obtain relief under Rule 60.02, the moving party "must describe the basis of relief with specificity," *Minor Miracle Prods., LLC v. Starkey*, No. M2011-00072-COA-R3-CV, 2012 WL 112593, at *7 (Tenn. Ct. App. Jan. 12, 2012) (citing *Hopkins v. Hopkins*, 572 S.W.2d 639, 640 (Tenn. 1978)), and establish by clear and convincing evidence that she is entitled to relief. *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). "Evidence is clear and convincing when it leaves 'no serious or substantial doubt about the correctness of the conclusions drawn.'" *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

*Rule 60.02(3): Void Judgment*

Rule 60.02(3) provides for relief from a void judgment. In *Turner*, we explained that a judgment is void if it appears on the face of the record itself that the court lacked subject matter jurisdiction, the judgment was outside of the pleadings, or the court lacked

7

jurisdiction over the parties. *Turner*, 473 S.W.3d at 270. A "void judgment[] may be attacked at any time" under Rule 60.02(3). *Id.* at 279.

Our standard of review of a trial court's denial of relief under Rule 60.02(3) is de novo with no presumption of correctness. *Id.* at 269. "Any factual findings" made by the trial court are "reviewed de novo, with a presumption of correctness, unless the evidence preponderates otherwise." *Id.* (citing Tenn. R. App. P. 13(d)).

The Rule 60.02 motion did not assert that the judgment was void. Instead, it asserted that the wrongful death suit was filed by Mr. Hussey's mother, who did not have priority under the Tennessee wrongful death statute; the party with priority was the child as the next of kin. In this Court, the child argues that the judgment is void because he was not before the court when the case was dismissed, and therefore, the order should be set aside to avoid an injustice. The child asserts that no one had the authority to waive his interest and that his claim was not affected by any agreement, settlement, or order of dismissal executed by a third party.

The child cites several cases in support of his position, but none is on point. For instance, he cites *Busby v. Massey*, 686 S.W.2d 60 (Tenn. 1984), in which the administrator of a decedent's estate brought a wrongful death suit on behalf of the decedent's minor children. After the appointment of an attorney ad litem, the parties entered a compromise settlement, which was approved by the court. *Id.* at 61. The minor children's mother moved to intervene, have the consent judgment vacated, and be substituted for the administrator to prosecute the lawsuit on behalf of the minor children. *Id.* at 60. The trial court denied the motion. *Id.* at 61. The Court of Appeals reversed, holding that the right of the children to sue or settle was superior to that of the administrator, and vacated the judgment. *Id.* The Tennessee Supreme Court held that the minor children's next friend or guardian did not necessarily have priority over the administrator to bring a wrongful death suit. *Id.* at 62. However, the Court found that the administrator failed to comply with Tennessee Code Annotated section 34-3-113 by not providing the minor children's parents and guardians with notice of the petition for settlement approval and by not serving the defendants with a copy of the petition or having them join in the petition. *Id.* at 64. Based on this statutory noncompliance, the Tennessee Supreme Court affirmed the Court of Appeals, vacated the settlement approval, and remanded for a hearing on whether the proposed settlement was in the best interest of the minors. *Id. Busby* is distinguishable from the case before us. In *Busby*, the wrongful death action was filed for the benefit of the minor children; the trial court knew of the existence of the minor children, unlike the trial court here. The basis for the Tennessee Supreme Court's decision to remand for a new settlement approval hearing was not Rule 60.02, but noncompliance with Tennessee Code Annotated section 34-3-113, which has since been repealed. The Court remanded the case for a new hearing

on the settlement approval, the settlement was not set aside, and the children's mother was not substituted as the plaintiff. *Id.* at 64.

The child also relies on *Thomas v. R.W. Harmon, Inc.*, 760 S.W.2d 212 (Tenn. Ct. App. 1988). In *Thomas*, a young girl was struck by a school bus and sustained serious injuries that required partial amputation of her right leg. *Id.* at 212–13. Five months after the accident, her parents entered into a compromise settlement of $5,000 on her behalf without the benefit of counsel or a guardian ad litem. *Id.* at 213. The circuit court approved the settlement and entered judgment relieving defendants from any liability for claims of the minor child. *Id.* The injured girl's sister petitioned the chancery court to set aside the settlement. *Id.* at 212. The chancery court set aside the judgment based on the circuit court's failure to appoint a guardian ad litem under Tennessee Rule of Civil Procedure 17.03. *Id.* at 213–14. The Court of Appeals affirmed the trial court, holding that the minor child was prejudiced by the failure of the circuit court to appoint a guardian ad litem to represent the minor child's best interests. *Id.* at 217. The issue before the court in *Thomas* was not whether the judgment was void and should be set aside under Rule 60.02. Rather, the issue was the reasonableness of the settlement for the child's personal injury claims filed by her parents without counsel or a guardian ad litem. *Id.* Here, no claim was filed by the child, he was not a party to the proceedings, the appointment of a guardian ad litem was not at issue, and the adequacy of the settlement was not at issue.

Here, we agree with the child that courts in Tennessee "assume a special responsibility to protect a minor's interests." *See Wright v. Wright*, 337 S.W.3d 166, 178 (Tenn. 2011). "In [an] action, claim, or suit in which a minor . . . is a party" or a minor sustains a personal injury due to the "wrongful act of another, the court in which the action . . . is pending" may approve any settlement on behalf of the minor. Tenn. Code Ann. § 34-1-121(b) (2015); *see also id*. § 29-34-105(a) (2012) (requiring a hearing in chambers with the minor and legal guardian present for any tort claim settlement involving a minor that exceeds $10,000). However, these statutes and the cases construing them are applicable when a minor is a party to a proceeding or when the suit is brought for the benefit of the minor. Here, the child was not a party in the proceeding, nor was the suit brought for his benefit. The trial court did not know of the child's claim and therefore had no reason to review any settlement.

None of the reasons presented for relief under Rule 60.02(3) has merit. The child failed to establish by clear and convincing evidence that the judgment was void. Applying the considerations in *Turner*, 473 S.W.3d at 270, the trial court had jurisdiction to hear the subject matter of Ms. Chearis's wrongful death complaint, the judgment was within the pleadings, and the trial court had personal jurisdiction over all the parties before it. Based on the pleadings, Ms. Chearis appeared to have the right to file the

wrongful death suit as next of kin and in the absence of a claim filed by the child under Tennessee's wrongful death statute, Tennessee Code Annotated section 20-5-107(a) (2009 & 2017 Supp.). Under this section, an "action may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased *or by next of kin* . . . ." *Id.* (emphasis added).[6]

"A judgment is not void . . . because it is or may have been erroneous." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (quoting *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir. 1995)) (internal quotations omitted). A judgment is not void because a party is dissatisfied with the result, *Furlough*, 397 S.W.3d at 127–28 (quoting *Henderson*, 318 S.W.3d at 336), or chose not to participate in the proceedings. *See Cain v. Macklin*, 663 S.W.2d 794, 796 (Tenn. 1984). A judgment is not void because a party claims it is unjust. The trial court did not err in denying relief under Rule 60.02(3).

### Rule 60.02(5): For Any Other Reason Justifying Relief

Rule 60.02(5) functions as a catch-all to provide equitable relief when relief is not available under the other subsections. *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. Ct. App. 1990). Its language is open-ended but subject to a narrow interpretation. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993). The rule "affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02." *Furlough*, 397 S.W.3d at 128 (quoting *Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000)) (internal quotation marks omitted). Reasons justifying relief are found only "in cases of overwhelming importance or in cases involving extraordinary circumstances or extreme hardship." *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000) (citing *Underwood*, 854 S.W.2d at 97).

The standards of Rule 60.02(5) are more demanding than those applicable to the other grounds for Rule 60.02 relief. *In re Joeda J.*, 300 S.W.3d 710, 716 (Tenn. Ct. App. 2009) (quoting *Wilkerson v. PFC Global Grp., Inc.*, No. E2003-00362-COA-R3-CV,

---

[6] *See Chapman v. King*, 572 S.W.2d 925, 927–29 (Tenn. 1978) (holding that the decedent's husband, not her parents, was the proper party to bring a wrongful death suit and was permitted to be substituted even after the expiration of the statute of limitations); *Bell v. Nolan*, No. M2000-02684-COA-R3-CV, 2001 WL 1077956, at *5–6 (Tenn. Ct. App. Sept. 14, 2001) (holding that a surviving spouse can waive his right of action to the next of kin of the deceased and determining that the decedent's parents were proper plaintiffs under Tennessee Code Annotated section 20-5-106); *Foster v. Jeffers*, 813 S.W.2d 449, 453 (Tenn. Ct. App. 1991) (holding that the husband, by declining to sue, waived his rights to sue, thus conferring those rights upon the decedent's nephews as next of kin).

2003 WL 22415359, at *9 (Tenn. Ct. App. Oct. 23, 2003)). "The bar for obtaining relief is set very high," and the moving party bears a heavy burden. *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005) (citing *Johnson v. Johnson*, 37 S.W.3d 892, 895 n.2 (Tenn. 2001), *overruled by Howell v. Howell*, 137 S. Ct. 1400 (2017)). A Rule 60.02(5) motion "is not to be used to relieve a party from 'free, calculated, and deliberate choices he has made;' a party remains under a duty to take legal steps to protect his own interests." *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 19 (Tenn. 1991) (quoting *Cain*, 663 S.W.2d at 796).

A Rule 60.02(5) motion must be filed "within a reasonable time." Tenn. R. Civ. P. 60.02. Whether a Rule 60.02 motion is filed within a reasonable time is a question of fact and not a question of law. *Thompson*, 798 S.W.2d at 238 (quoting *Wooley v. Gould, Inc.*, 654 S.W.2d 669, 672 (Tenn. 1983)). This determination is made on a case-by-case basis. *See, e.g.*, *Cain*, 663 S.W.2d at 795–96 (holding motion for relief not filed within a reasonable time where motion was filed over two years after entry of judgment); *Seay ex rel. Nationwide Ins. v. Walsh*, No. E2010-02598-COA-R3-CV, 2011 WL 3557077, at *3 (Tenn. Ct. App. Aug. 11, 2011) (holding a motion for relief filed over three years after entry of judgment was untimely); *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992) (finding eight-year delay in filing motion not reasonable); *Magnavox Co. of Tenn. v. Boles & Hite Constr. Co.*, 583 S.W.2d 611, 613–14 (Tenn. Ct. App. 1979) (holding that delay of over three years was untimely when record revealed no excuse or explanation); *see also Davis v. Warden, Fed. Transfer Ctr., Okla. City*, 259 F. App'x 92, 94–95 (10th Cir. 2007) (finding a Rule 60(b)(6) motion untimely where there was an unexplained, three-year delay); *Friedman v. Wilson Freight Forwarding Co.*, 320 F.2d 244, 246–47 (3rd Cir. 1963) (holding that a delay of thirteen months was unreasonable).

A motion under the catch-all provision of subsection (5) filed more than a year after final judgment is generally untimely unless extraordinary circumstances excuse the party's failure to seek relief sooner. *Taylor v. Wetzel*, No. 4:CV-04-553, 2014 WL 5242076, at *6 (M.D. Pa. Oct. 15, 2014) (quoting *Gordon v. Monoson*, 239 F. App'x 710, 713 (3d Cir. 2007) (construing Federal Rule of Civil Procedure 60(b)(6)).[7] A claim under Rule 60.02(5) cannot be asserted "simply because relief under other provisions [of Rule 60.02] is time barred." *Furlough*, 397 S.W.3d at 128 (quoting *Wallace v. Aetna Life & Cas. Co.*, 666 S.W.2d 66, 67 (Tenn. 1984)) (internal quotation marks omitted). "An

---

[7] When interpreting the Tennessee Rules of Civil Procedure, we are guided by the decisions of the federal courts interpreting comparable Federal Rules of Civil Procedure. *Turner*, 473 S.W.3d at 268 (citing *Thomas v. Oldfield*, 279 S.W.3d 259, 261–62 (Tenn. 2009)). The catch-all provision of Tennessee Rule 60.02(5) is comparable to federal Rule 60(b)(6). *Compare* Tenn. R. Civ. P. 60.02(5), *with* Fed. R. Civ. P. 60(b)(6).

untimely request under Rule 60.02(1) or (2) may not be asserted under Rule 60.02(5)." *Id.* at 128.

We review the trial court's denial of a Rule 60.02(5) motion for an abuse of discretion. *See Federated Ins.*, 18 S.W.3d at 624 (citing *Toney*, 810 S.W.2d at 147). Under this standard, "a trial court abuses its discretion only when it applies an incorrect legal standard, reaches an illogical result, commits clear error in its assessment of the evidence, or relies upon flawed reasoning that results in an injustice." *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)).

The child's Rule 60.02 motion was filed twenty months after the entry of the order. The child argues the delay was reasonable because Ms. Harris relied on Mr. Brannon, whom she retained in December 2008, to handle the case and did not know that he had withdrawn from the case until November 2011. Ms. Harris testified that she believed Mr. Brannon was representing the child and that she was "waiting on a response from him." She called his office twice in 2009 but received no reply. She took no action in 2010. She never went to his office to ascertain the status of the case. In October 2011, she sought assistance from a legal aid attorney. She learned about Ms. Chearis's lawsuit in November 2011 and filed her motion in December 2011. While Ms. Harris acted promptly upon learning that Ms. Chearis had settled the wrongful death lawsuit, she failed to make appropriate inquiries or follow up with Mr. Brannon after hiring him in December 2008.

Under the facts presented, we conclude the trial court did not abuse its discretion in ruling that the Rule 60.02 motion filed twenty months after entry of the order was not timely filed. The trial court did not apply an incorrect legal standard, reach an illogical result, commit clear error in its assessment of the evidence, or rely on flawed reasoning. *See In re Baby*, 447 S.W.3d at 817; *see, e.g.*, *Cain*, 663 S.W.2d at 795–96 (holding motion filed over two years after entry of judgment was not filed within a reasonable time); *Friedman*, 320 F.2d at 246–47 (3d Cir. 1963) (holding that a delay of thirteen months was unreasonable).

Relief under subsection (5) is appropriate only in "cases involving extraordinary circumstances or extreme hardship." *Henderson*, 318 S.W.3d at 338 (citing *Federated Ins. Co.*, 18 S.W.3d at 624). The child argues that the trial court's refusal to set aside the order of dismissal results in severe injustice to him because his interests were not protected by the attorney hired to pursue the claim, he had no knowledge of the lawsuit brought and settled by Ms. Chearis, and he received none of the settlement proceeds. These grounds for relief are more appropriately encompassed within the circumstances referenced in Rule 60.02(1) and (2)—mistake, excusable neglect, and fraud. Even if these

circumstances merited relief under Rule 60.02(1) and (2), they are time-barred and cannot be asserted as grounds for relief under Rule 60.02(5) or as a substitute for a fraud action against Ms. Chearis and legal malpractice actions against Mr. Brannon and Porter & Strange, PLLC. While these circumstances are unfortunate, they do not rise to the level of extraordinary circumstances or extreme hardship justifying relief under Rule 60.02(5).[8]

### III.

We hold that the trial court did not err in denying the Rule 60.02 motion to set aside the order of dismissal. The judgment of the Court of Appeals is reversed, and the judgment of the trial court is reinstated. Costs of this appeal are taxed to Sharondra Harris and her surety, for which execution may issue if necessary.

_____

SHARON G. LEE, JUSTICE

---

[8] *See, e.g.*, *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 597–98 (6th Cir. 2002) (finding Rule 60(b)(6) relief unavailable where a wrongful death action was brought by a plaintiff who lacked standing and joining the real party in interest would have defeated complete diversity); *Sipes v. Madison Cty.*, No. 12-1130, 2015 WL 237217, at *5 (W.D. Tenn. Jan. 16, 2015) (noting that Rule 60(b)(6) generally does not provide a mechanism to address statute of limitations where an improper party was named in a wrongful death action, and because limitations periods apply in almost all civil cases, the threat that an action may be time-barred is not exceptional or extraordinary); *Furlough*, 397 S.W.3d at 131–32 (holding that employee's untimely claim for relief from a mistake under Rule 60.02(1) may not be asserted under Rule 60.02(5)); *Banks*, 817 S.W.2d at 18 (holding that barring Plaintiff's claim based on statute of limitations did not constitute extraordinary circumstances or extreme hardship under Rule 60.02(5)); *Food Lion, Inc. v. Washington Cnty. Beer Bd.*, 700 S.W.2d 893, 896 (Tenn. 1985) (holding that ignorance of the law is not a proper ground for relief under Rule 60.02).