IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 1, 2021

## ESTATE OF DONNA MCCULLOUGH v. ANTHONY MCCULLOUGH

**Appeal from the General Sessions Court for Hardin County**
**No. 9351    Daniel L. Smith, Judge**

_____

**No. W2020-01723-COA-R3-CV**

_____

Donna McCullough ("Wife")[1] and Anthony McCullough ("Husband") executed a marital dissolution agreement (the "MDA") on June 14, 2018. The agreement provided that Husband was to pay Wife $4,521.00 per month in alimony and that the obligation terminated upon the death of either party. The parties were divorced by the General Sessions Court for Hardin County on September 21, 2018. Several months later, Husband sought to set aside the final decree of divorce, arguing that the alimony provision in the MDA was void. Following a hearing, the trial court denied Husband's motion and granted Wife her attorney's fees incurred in defending the action. Husband appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Anthony McCullough.

Jennifer Twyman King and Jay Dustin King, Jackson, Tennessee, for the appellee, Estate of Donna McCullough.

## OPINION

### FACTUAL & PROCEDURAL BACKGROUND

This is a post-divorce matter involving whether an alimony provision contained in the parties' MDA renders the final decree of divorce void. The underlying facts are largely

---

[1] Wife died on February 8, 2022, and her estate was substituted as a party.

undisputed. On May 15, 2018, Husband and Wife went to the office of attorney Ryan Hagenbrok to discuss an agreed divorce. Both parties wanted the divorce and, according to Mr. Hagenbrok, appeared to agree on how to divide the marital estate. Husband and Wife were married for several years[2] and had one child together. During the marriage, Husband started a successful company, A&D Backhoe ("A&D"). Wife sometimes worked in A&D's office; however, Wife had significant health issues and had been receiving disability for several years by the time of the divorce.

At the initial consultation on May 15, 2018, Mr. Hagenbrok advised the parties that he could draft the divorce paperwork but that he could not represent both Husband and Wife. Husband and Wife determined that Mr. Hagenbrok would represent Wife. According to Mr. Hagenbrok, Husband and Wife agreed that Husband would pay approximately $5,000.00 total per month to Wife. Husband volunteered to pay $4,521.00 in alimony, and Mr. Hagenbrok calculated the monthly child support obligation as $479.00. Mr. Hagenbrok testified at the final hearing in this matter that Husband repeatedly stated to Mr. Hagenbrok that Husband wanted Wife and the parties' child to be "taken care of." Husband did not dispute this at trial; rather, Husband himself testified that he originally wanted to provide Wife with $2,500.00 per month and the child with $2,500.00 per month. Corroborating Mr. Hagenbrok's testimony, Husband mentioned multiple times during his testimony that he wanted his family to be taken care of and that he agreed to the $5,000.00 per month figure. According to Mr. Hagenbrok, Husband was evasive about his monthly income but remained adamant that he could pay $5,000.00 and that he wanted Wife to have an interest in A&D. Wife retained Mr. Hagenbrok to draft the necessary documents, and Mr. Hagenbrok advised Husband to retain his own attorney to look over the paperwork.

The parties returned to the office on June 14, 2018, to review the paperwork drafted by Mr. Hagenbrok. Husband had not retained his own attorney. Mr. Hagenbrok informed the parties that they did not have to sign the documents that day. Mr. Hagenbrok testified that he advised the parties there was no rush and that they could take the paperwork home and come back another day to sign it. Mr. Hagenbrok then gave the parties time to review the paperwork, although Husband testified that he read only one-fourth of it. The documents included, *inter alia*, a permanent parenting plan, a discovery waiver, and the MDA. As relevant, the MDA contained the following provisions regarding alimony:

### ALIMONY IN SOLIDO

The parties agree that the purpose of the award of alimony in solido is to provide financial support to the Wife. The alimony is a form of support, the amount as specified herein being not modifiable.

---

[2] The complaint for divorce provides that the parties married in 2012; however, both Husband and Wife testified that they were married for approximately eighteen years.

Husband and Wife agree that alimony in solido is necessary for the support and maintenance of Wife based upon the factors in Tenn. Code Ann. § 36-5-121(i)(1-12). The parties agree, understand and intend that alimony in solido is non-modifiable and deemed not to be dischargeable in bankruptcy as the alimony payments are in the nature of support. Further, these alimony payments are non-deductible by the Husband nor are the alimony payments includable as income for the Wife.

Husband agrees to pay alimony in solido to Wife in the sum of four thousand five hundred and twenty-one dollars and no./100 cents ($4,521.00) per month until the date of his death, at which time the parties agree and stipulate that it shall terminate. The parties also agree that Husband's obligation for alimony in solido payments referenced herein also terminate upon the death of Wife. The parties understand that typically alimony in solido typically does not terminate upon the death of either party, however they agree and stipulate to waive such provision in this instance and agree that these payments shall continue on a monthly basis until such time as Husband or Wife's death.

The MDA also contains the following pertinent provisions:

**VOLUNTARY EXECUTION**

Each party acknowledges that this agreement has been entered into of his or her own volition with full knowledge and information including tax consequences. In some instances, it represents a compromise of disputed issues. Each believes the terms and conditions to be fair and reasonable under the circumstances. No coercion or undue influence has been used by or against either party in making this agreement. Each party acknowledges that no representations of any kind have been made to him or her as an inducement to enter into this agreement, other than the representations set forth in the Marital Dissolution Agreement. Both parties have exercised their discovery rights to their complete satisfaction. Both parties have had such access to records, documents, accounts, things, and experts as they desire. Both parties waive any claim to set this agreement aside based upon lack of knowledge or failure to disclose financial information.

\*     \*     \*

Wife has retained counsel in connection with this matter. Husband is not represented by counsel and Wife is represented by attorney Ryan Hagenbrok. Husband agrees to pay attorney Ryan M. Hagenbrok for this divorce proceeding and this agreement. Husband understands that his

- 3 -

payment to Ryan M. Hagenbrok, attorney at law, does not create an attorney-client relationship and that Ryan M. Hagenbrok is not and has never been his attorney.

Husband and Wife signed the MDA on June 14, 2018, and their signatures appear on every page of the document. Mr. Hagenbrok filed the MDA and the attendant documents with the trial court that day. The trial court entered a final decree of divorce on September 21, 2018, incorporating by reference the MDA.

On January 25, 2019, Husband filed a pleading titled "Motion for Relief from Judgment Pursuant to Tennessee Rule of Civil Procedure 60 or in the Alternative to Modify the Final Decree of Divorce." Therein, Husband argued, *inter alia*, that the MDA "was entered in violation TRCP 60(1) and furthermore, is void under TRCP 60(4)[.]" Regarding alimony specifically, Husband claimed:

> i. That it appears the contract creates somewhat of a hybrid form of alimony between the parties.
>
> ii. Specifically, the Husband is to pay Wife $4,521.00 per month until she dies.
>
> iii. Despite the provision's title, this description seems to indicate alimony in futuro.
>
> iv. Alimony in solido needs to have provided a lump sum that is designated and set out. Alimony in solido is neither designed nor intended to provide a lifetime of support.
>
> v. The contract accurately reflects that alimony in solido is necessary for the support and maintenance of Wife based upon the factors in Tenn. Code Ann. § 36-5-121(i)(1-12). However, alimony in solido is not what is provided for in the provision.
>
> vi. Additionally, there is no mention of what is to take place in the event the Wife remarries.
>
> vii. This provision is thus void in violation of Rule 60 (4).

Husband's motion also provided that "[Husband] was not afforded an opportunity to meet with an attorney and discuss these proceedings prior to having signed the contract[,]" and that "it was never disclosed to [Husband] of his right to seek advice from counsel prior to signing said agreement."

Following the filing of Husband's motion, the parties engaged in protracted litigation over several issues not relevant to the instant appeal. In July of 2019, Wife filed an action in the Chancery Court for Hardeman County to dissolve A&D. A&D essentially ceased all operations as a result of that lawsuit.

Accordingly, on May 7, 2020, Husband filed an amended Rule 60.02 motion. Husband incorporated the claims from his first motion but added the following averment:

> b) Marital Dissolution Agreement - Alimony payments. Although it is disputed that the alimony as set forth and ordered is unenforceable and void, without waving this position, Husband would assert that A&D backhoe was his source of earning a living and Wife's actions in seeking dissolution of A&D backhoe will eliminate Husband's ability to pay and due to proceeds realized from the dissolution of A&D backhoe, Wife will no longer have a need.

> c) That accordingly, a substantial and material change in circumstance has occurred requiring a modification of the final decree of divorce.

Wife responded to Husband's amended petition, contending that Husband did not sign the MDA under any coercion or duress and that the parties agreed to non-modifiable alimony. Wife claimed that the "non-modifiable" language in the MDA was dispositive and also pointed to the waiver provision of the MDA. Essentially, Wife argued that the language of the MDA was clear and that Husband knew what he was doing when he signed the agreement.

The trial court held a hearing on Husband's motion on July 13, 2020,[3] at which Husband, Wife, and Mr. Hagenbrok testified. At the end of the hearing, the trial court took the motion under advisement. On December 4, 2020, the trial court entered an order denying Husband's request to set the final decree aside. The trial court found that Husband did not satisfy his burden of proving that the final decree was void. The trial court also awarded Wife $13,011.68 in attorney's fees based upon an attorney's fees provision in the MDA. Husband filed a timely notice of appeal to this Court.

**ISSUES**

Husband raises two issues on appeal, which are taken verbatim from his brief:

I. Whether the alimony in solido provision contained within the marital dissolution

---

[3] Several other motions were also heard at the July 13, 2020 hearing. The only issues in this appeal, however, are whether the alimony provision is void and whether Wife's estate is entitled to its attorney's fees. We therefore focus our discussion on the facts pertinent to those questions.

agreement is void?

II. Whether the award of attorney fees to the Wife should be reversed?

Wife's estate raises the additional issue of whether it should be awarded the attorney's fees incurred on appeal.

## DISCUSSION

### A. Void Judgment

Husband first challenges the trial court's denial of his motion to set aside the final decree pursuant to Tennessee Rule of Civil Procedure 60.02. We note at the outset that it is somewhat difficult to discern the subsection of Tenn. R. Civ. P. 60.02 under which Husband proceeds. Rule 60.02 provides, as relevant:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

In his first motion to set aside the final decree, Husband stated that the MDA was entered "in violation TRCP 60(1) and furthermore, is void under TRCP 60(4)." At the final hearing, Husband's counsel mentioned several times that Husband entered into the MDA due to mistake, negligence, or inadvertence. *See* Tenn. R. Civ. P. 60.02(1). Husband's brief is unclear as to this point, as Husband frames his primary argument as the final decree being "void," but cites to "Rule 60 (4)" as opposed to Rule 60.02(3). Based on the record and the substance of Husband's brief, we understand the argument before us to be that the final decree is void, implicating Tenn. R. Civ. P. 60.02(3). To the extent Husband made an argument in the trial court pertaining to Tenn. R. Civ. P. 60.02(1), addressing mistake, neglect, or inadvertence, that has not been raised as an issue on appeal and is waived. *See Logan v. Estate of Cannon*, 602 S.W.3d 363, 383 n.4 (Tenn. Ct. App. 2019) (issues not stated in a party's statement of the issues are waived); *see also* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

- 6 -

Typically, a trial court's disposition of a motion under Rule 60.02 is reviewed for abuse of discretion. *See Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015). However, when reviewing a trial court's decision on a motion filed pursuant to Rule 60.02(3), our review is de novo with no presumption of correctness. *See id.* at 269. Any factual findings made by the trial court are reviewed de novo with a presumption of correctness, unless the evidence preponderates otherwise. *Id.*; *Hussey v. Woods*, 538 S.W.3d 476, 483 (Tenn. 2017); *see also* Tenn. R. App. P. 13(d).

Regarding void judgments, our Supreme Court has explained:

"[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, [the] exception to finality would swallow the rule." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (internal citation omitted). A judgment rendered by a court lacking either personal or subject matter jurisdiction is void. *Ins. Corp. of Ireland* [*v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)]; *Hood v. Jenkins*, 432 S.W.3d 814, 825 (Tenn. 2013); *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996). Nevertheless, a judgment of a court of general jurisdiction is presumed to be valid and will be held void only when "its invalidity is disclosed by the face of that judgment, or in the record of the case in which that judgment was rendered." *Giles v. State ex rel. Giles*, 191 Tenn. 538, 235 S.W.2d 24, 28 (1950); *see also Hood*, 432 S.W.3d at 825.

*Turner*, 473 S.W.3d at 270.

In this case, Husband maintains that the final decree is void due to the alimony provision in the MDA. Specifically, Husband argues that while the alimony is labeled and referred to as alimony *in solido*, the alimony has no definite end date and actually constitutes modifiable alimony *in futuro*. We are unconvinced by Husband's argument for several reasons.

First, Husband cites no legal authority, nor did our own research reveal any, providing that the labeling of the alimony provision or its wording renders the provision at issue, or the final decree as a whole, void. Again, void judgments are those "so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *Id.* Examples of "void" judgments are those entered by a court lacking subject matter or personal jurisdiction. *See, e.g.*, *id.* at 270; *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996) (explaining that a void judgment is one rendered by a court lacking subject matter or personal jurisdiction, or where "the decree itself is wholly outside of the pleadings"); *State ex rel. Catalano v. Woodcock*, No. E2015-01877-COA-R9-CV, 2016 WL 3677342, at *7 (Tenn. Ct. App. July 5, 2016) (portion of divorce court's judgment

related to child support void when service of process was not properly effectuated on father and court thus lacked personal jurisdiction).

Here, Husband urges that his alimony obligation should be modifiable because it constitutes alimony *in futuro*. Nonetheless, the modifiability of the alimony has no bearing on whether the final decree is "void" as that term is contemplated by Rule 60.02(3). Indeed, "[a] judgment is not void because it is or may have been erroneous[,]" nor is a judgment void because "a party is dissatisfied with the result," "chose not to participate in the proceedings," or claims the judgment is "unjust." *Hussey*, 538 S.W.3d at 485 (citations omitted). Insofar as Husband's argument is that his alimony should be modifiable, the essence of his position is that the final decree is void because "it is or may have been erroneous[,]" and Husband is "dissatisfied with the result." *Id.* That is not a basis for relief under Rule 60.02(3).

Moreover, while Husband argues that the alimony provision is void because it actually obligates Husband to pay alimony *in futuro*, which is typically modifiable, *see* Tenn. Code Ann. § 36-5-121(f), there is nothing illegal or inimical to public policy about contracting for non-modifiable alimony in an MDA. Rather, this Court has many times held that parties may execute an MDA with terms different from those provided in the alimony statute, and parties are "free to obligate themselves by agreement beyond what the courts could order them to do as a matter of law." *Holt v. Holt*, 751 S.W.2d 426, 428 (Tenn. Ct. App. 1988). "In such cases the courts are not sympathetic to a party who promises more than he can reasonably expect to pay in order to induce the other spouse to obtain a divorce and then seeks the termination of the agreed payments." *Id.*

For example, in *DeLuca v. Schumacher*, the parties entered into an MDA providing that the husband would pay alimony *in futuro* to the wife even after the wife remarried. No. M2019-00601-COA-R3-CV, 2020 WL 1079524, at *1 (Tenn. Ct. App. Mar. 6, 2020). When the wife did remarry, the husband sought to terminate his alimony obligation, relying on Tenn. Code Ann. section 36-5-121(f)(3). *Id.* at *2. Section 36-5-121(f) provides that alimony *in futuro* terminates "automatically and unconditionally upon the death or remarriage of the recipient." On appeal, we explained that the alimony statute was inapposite in that case because

> one spouse may agree to pay more alimony to the other spouse than he or she may be statutorily required to pay. By specifying in the MDA that Husband would pay Wife alimony even if she were to remarry, the parties essentially agreed that Tenn. Code Ann. § 36-5-121(f)(3) is not applicable to their MDA. An MDA is a contract, and parties are free to contract for provisions outside a statute's realm.

*Id.* at *8. Although we acknowledged in *DeLuca* the "tension between the enforceability of a valid contract and the court's continuing authority to modify alimony awards," we also

explained that "courts do not retain jurisdiction to modify alimony in cases where the divorcing parties have specified in their MDAs that an alimony award is not modifiable." *Id.* at \*5 (citing *Winne v. Winne*, No. E2018-01050-COA-R3-CV, 2019 WL 5606928, at \*2 (Tenn. Ct. App. Oct. 30, 2019); *Karsonovich v. Kempe*, No. M2017-01052-COA-R3-CV, 2018 WL 1091735, at \*3 (Tenn. Ct. App. Feb. 27, 2018)).

We rejected a similar argument in *Karsonovich*, 2018 WL 1091735. In that case, the husband agreed in the MDA to pay the wife "non-modifiable transitional alimony" from 2014 through 2027. *Id.* at \*1. Later, the husband lost his job and wanted to modify his alimony obligation; he filed a declaratory judgment action arguing, *inter alia*, that the MDA was ambiguous and unenforceable. *Id.* The husband later argued on appeal that "the [alimony] provision is ambiguous based upon the fact that it describes the alimony as transitional but states that it is non-modifiable." *Id.* at \*4. In rejecting this argument, we noted that the provision "may not share traditional characteristics of transitional alimony[,]" but the parties expressly agreed the alimony was non-modifiable. *Id.* Under such circumstances, the MDA is "deemed to have force" notwithstanding the terms of section 36-5-121. *Id.* We reiterated that "alimony statutes are not applicable where the parties agree in a marital dissolution agreement to terms different from those set out in the statutes." *Id.* (quoting *Vick v. Hicks*, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at \*4 (Tenn. Ct. App. Nov. 17, 2014)); *see also Honeycutt v. Honeycutt*, 152 S.W.3d 556, 563–64 (Tenn. Ct. App. 2003) (parties were free to contract in their MDA for termination of husband's alimony obligation upon wife cohabitating "with a man not related to her," despite that language not appearing in section 36-5-121).

Accordingly, "if a divorcing party wishes to be able to modify alimony, that party should avoid including language in the MDA stating the alimony is non-modifiable." *Karsonovich*, 2018 WL 1091735, at \*5. Although we agree with Husband that the provision at issue is atypical and outside the confines of what the alimony statute provides, *see* Tenn. Code Ann. § 36-5-121(f), the cases noted above illustrate that this is inapposite. Husband was free to obligate himself to pay more alimony than a court could have ordered him to pay. *Holt*, 751 S.W.2d at 428. We also do not find it dispositive that the alimony is labeled as *in solido*, insofar as the provision at issue is clear and unambiguous[4] as to Husband's obligations. *See Karsonovich*, 2018 WL 1091735, at \*4.

Finally, Husband's own testimony from the final hearing undermines any argument that the MDA or the final decree is somehow void or unenforceable, as it reflects that Husband signed the MDA willingly and after having had opportunity to retain independent counsel. Husband conceded that he understood at the time of the MDA's execution that it obligated him to pay Wife $4,521.00 per month and that he and Wife agreed on that figure prior to the divorce. Husband stated multiple times that he wanted to "take care of" Wife

---

[4] The MDA also provides that "the headings in this agreement are for convenience only and are not to be used in interpreting this agreement."

and the parties' child.[5]   Husband also testified that he knew the alimony could not be changed, but he was under the impression that the alimony was conditioned on the operability of A&D:

> Q.   Now, was there a discussion that you had with -- in front of Mr. Hagenbrok with [Wife] understanding that the alimony was non-modifiable?
>
> A.   That I don't remember.
>
> Q.   Okay. Did you intend to ever change the alimony?
>
> A.   No, I couldn't change it.
>
> Q.   Okay.
>
> A.   Unless the business went -- you know, went down.
>
> Q.   Okay. Other than the business going down in your words, you didn't believe -- you did not intend for the alimony to be able to be changed?
>
> A.   Be what now?
>
> Q.   Other than the business, in your words, going down, it was not your intention for the alimony to be able to be changed?
>
> A.   No. I wanted them to be took care.

As such, the record clearly establishes that Husband sought to terminate his alimony obligation not because of any legal error in the MDA's execution but because of circumstances that arose after the divorce was final.  In this sense, Husband's argument is that the final decree is void because Husband "is dissatisfied with the result[.]" *Hussey*, 538 S.W.3d at 485 (citing *Furlough*, 397 S.W.3d at 127–28).  As we have explained, however, "[r]elief under Rule 60.02 is not available to a party whose circumstances change after entry of the judgment" or when the party is "dissatisfied with a particular outcome." *Id.* at 482.  Consequently, the trial court did not err in denying Husband's request to set the final decree aside.[6]

---

[5] Husband asserted in his motion that he "was not afforded an opportunity to meet with an attorney and discuss these proceedings prior to having signed the contract[,]" and that "it was never disclosed to [Husband] of his right to seek advice from counsel prior to signing said agreement."  This averment was contradicted by Husband's testimony at trial, however.

[6] Wife died on February 8, 2022.  Because we have concluded that the final decree is valid and the alimony provision enforceable, Husband's obligation terminated on February 8, 2022, per the plain language of that provision.

- 10 -

## B. Attorney's Fees

Husband also asserts on appeal that the trial court erred in awarding Wife $13,011.68 in attorney's fees. The MDA provides:

> Should either party incur any expense or legal fees in a successful effort to enforce or defend this marital dissolution agreement, in whole or in part, the Court SHALL award reasonable attorney fees and suit expenses to the party seeking to enforce this agreement.

Husband's sole argument as to this issue is that because this Court should find the final decree void, the attorney's fees provision is also void and inapplicable. Because we have determined that the MDA and the final decree are not void, this issue is without merit. We affirm the trial court's award of attorney's fees to Wife's estate.

Wife's estate also asserts that it should be awarded the attorney's fees incurred in defending Husband's appeal pursuant to Tennessee Code Annotated section 36-5-103(c), which provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

The award of fees under this section is within this Court's discretion. *Pless v. Pless*, 603 S.W.3d 753, 773 (Tenn. Ct. App. 2019).[7] Under all of the circumstances in this case, we exercise our discretion to grant the estate's request for attorney's fees incurred on appeal.

### CONCLUSION

The ruling of the General Sessions Court for Hardin County is affirmed, and the case remanded for proceedings consistent with this opinion. Costs of this appeal are assessed to the appellant, Anthony McCullough, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

---

[7] In addition, attorney's fees on appeal are proper under the language of the MDA.