IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2, 2024 Session

## OLDSMITH GROUP, LLC ET AL. v. MOSBY COOL SPRINGS, LLC

**Appeal from the Chancery Court for Williamson County**
**No. 19CV-48550     James G. Martin, III, Judge**

_____

### No. M2022-01584-COA-R3-CV

_____

In this complex suit over a breach of a contract to sell real estate, the trial court dismissed one of the plaintiffs in an order certified as final under Tennessee Rule of Civil Procedure 54.02, but it reinstated that plaintiff two years later.  The court awarded the plaintiff-buyers specific performance, one of the limited available remedies under the contract.  However, because the seller had meanwhile taken actions that may have made this relief impossible, the trial court also noted it would consider civil contempt in the event the seller would not perform, and would award approximately $12.2 million in damages, which was the measure of harm for the dismissed plaintiff party.  The seller appeals. We conclude that the trial court erred in reinstating the party and that the proper method to challenge an improvidently granted 54.02 final judgment is appeal or an appropriate post-judgment motion.  We also conclude that, although the party was erroneously reinstated, the seller is not entitled to a new trial on the issue of liability.  Additionally, the trial court did not err in its determination that the seller committed the first material breach and did not err in awarding specific performance.  This court cannot review a future and speculative contempt judgment, and we vacate the portion of the judgment delineating any future contempt award.  We remand for consideration of whether the buyer is entitled to attorney's fees on appeal under the contract.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**
**in Part; Reversed in Part; Vacated in Part; Case Remanded**

JEFFREY USMAN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Donald Capparella, Jacob A. Vanzin, Michael B. Bressman, and David O. Huff, Nashville, Tennessee; and William G. Tishkoff and Christopher M. Vukelich, Ann Arbor, Michigan, for the appellant, Mosby Cool Springs, LLC.

Todd E. Panther and Mark Alexander Carver, Nashville, Tennessee, for the appellees, Oldsmith Group, LLC, and Hidden Valley Homes, LLC.

**OPINION**

I. Factual and Procedural History

This appeal involves a dispute over the sale of certain real property. The phrase "procedural morass" is often bandied about, but in this case, it is an apt description of the complicated and convoluted series of events giving rise to the case presently before us.[1] To help light a way through, we first offer an overview of the journey ahead before wading into the particular and challenging details in the paragraphs and pages that follow.

The parties' journey to this litigation began with a contract for the sale of certain real property. As the closing date approached, the seller mis-platted the property so that a common area which was to be conveyed and which was necessary for development of the property was instead kept with other property not under contract. The seller and buyer negotiated over easements to be put on this common area, as well as over other responsibilities of the seller that the circumstances of development made impractical to complete prior to sale. The seller gave notice of completion, and the buyer did not object, although the items under negotiation were incomplete and the parties had not agreed on the value of these items. The buyer, meanwhile, had executed an assignment of the contract without the seller's prior written consent, which was required under the contract. On the eve of closing, the seller insisted on unilaterally setting the costs of the items under negotiation, including imposing a $100,000 charge for fees it had never paid to the water utility district. The parties did not close, and the buyer and assignee sued the seller, who countersued. The assignee was dismissed from the action, and the buyer and assignee did not appeal that dismissal, which was designated as a final judgment. Meanwhile, the seller conveyed to a third party the property which was to have had the necessary easements, but without reserving the easements, thus making it perhaps impossible to develop the property under contract. The buyer sought to bring the assignee back into the case two years after dismissal for the purposes of showing the assignee's damages, which the trial court allowed. Ultimately, based on the seller's representation that it, despite the property transfer, actually would be able to specifically perform, the trial court granted specific performance to the buyer and assignee, stating that in the event of nonperformance, it would consider a motion for civil contempt. Speculating as to the circumstances of such contempt, the trial court found that the value of damages, which were mainly attributable

---

[1] The confusing contours of this case, reminiscent of the recursive stairwell in M.C. Escher's "Relativity," inspired the trial court to observe, "Look, this is not the way I want to finish my judicial career at all."

to the assignee, was over $12 million.

Turning from the overview to the particulars, the seller, Mosby Cool Springs, LLC (Mosby), was initially the owner of 22.51 acres of real property in Franklin, Tennessee. In May 2017, Mosby and the buyer, Oldsmith Group, LLC (Oldsmith), entered into a contract, pursuant to which Oldsmith was to buy a 7.34-acre portion of the property, known as "Lot 3," for $4,096,000, in order to construct townhomes. The sale included the "Lot 3 common area."

Mosby was to develop the parcel. Its obligations included providing water taps and piping to the proposed meter location, constructing a retaining wall, and installing asphalt topcoat on an access drive. The parties had some initial disagreements, and Mosby sent Oldsmith two default letters in August and October 2017 regarding the submission of site plans to the planning commission.[2] The parties, however, executed a third addendum to the contract in March 2018, reaffirming the contract for sale and postponing the closing date. As explained in more detail below, Oldsmith, the buyer, at one point determined it wished to assign the contract to Hidden Valley Homes, LLC (Hidden Valley).

Mosby was building apartments on the part of the property that was not subject to the sales contract. In the spring of 2019, it appeared that the parties were working toward closing, though the time was past what was originally contemplated by the contract. The parties blamed one another for the delay. Oldsmith asserted that the delays were due to a zoning issue with the city and the apartment complex construction falling behind schedule. Mosby speculated that Oldsmith did not have adequate funding to close. On April 22, 2019, an email from Hidden Valley copied Mosby's onsite project manager and listed outstanding items Mosby was required under contract to complete.

Mosby was responsible for platting the property to be conveyed, but the plat recorded on April 24, 2019, failed to include the Lot 3 common area with Lot 3, which was the parcel to be conveyed. The effect of this omission was the townhome lots became landlocked and it would be impossible to construct townhomes because the lots would be inaccessible for construction without trespassing on Mosby's remaining property. Furthermore, there was no area to place air conditioning units, mailboxes, sidewalks, and landscaping, and the lot owners would not be able to access their garages or use parking in front of the townhomes. Mosby refused to revise the plat, but the parties agreed that development could still take place and the sale could occur if Mosby granted appropriate easements over the common area.

---

[2] Mosby averred that Oldsmith had not submitted certain plans to Mosby for approval prior to submitting them to the city, but Oldsmith noted the unsubmitted materials originated with Mosby's own engineer.

In the spring of 2019, the parties were also engaged in negotiations over three outstanding items that were Mosby's responsibility under the contract. The testimony at trial established that, due to regulations from the Mallory Valley utility company, the water taps, which were the seller's responsibility, had to await the installation of the unit walls, which the buyer would construct. Mosby was also responsible for constructing a retaining wall, but because the retaining wall needed to tie into the last three units, part of it would have to be destroyed and rebuilt during construction. Likewise, the parties were negotiating over the asphalt topcoat of a roadway. The testimony at trial was that the traffic from construction vehicles would damage or destroy the topcoat. Accordingly, if Mosby completed it, it would have to be redone or repaired after the units were constructed.

On May 17, 2019, Mr. Chuck Olderman, Oldsmith's principal, sent a closing checklist which included a requested credit for the retaining wall, a need to agree regarding the topcoat, a need to resolve the water line credit, and a need to add the easement which became necessary over the townhome common area. Mr. Austin Knapp, Mosby's head of development, responded on May 22, 2019, that Mosby was working through the list, and he asked for the quote for the retaining wall. Emails from Mosby on May 28th and from Mr. Olderman of Oldsmith on June 3rd responding to the closing checklist email both reflected that the parties were still negotiating the credits for water taps and the retaining wall as well as the details of the easements. Mosby offered Oldsmith credits for the water taps, the retaining wall, and the topcoat, noting that bond for the asphalt would need to be transferred to Oldsmith.

Mosby proposed $62,877 in credits for the water taps, but Mr. Olderman testified that Oldsmith instead wanted Mosby to escrow $179,000 plus a rock allowance of an additional $106,400 for the water taps. He explained that one of Mosby's agents, Mr. Steve Biens, had told Oldsmith that he was uncertain if the area had been "overblasted." Without an assurance that any rock had been broken up by previous overblasting, Oldsmith did not wish to assume responsibility for the water taps, because removing rock at that stage could be very expensive.[3] Mr. Jim Spangler, principal of Hidden Valley, likewise testified that, if a rock hoe were needed, it would raise costs significantly. Mosby, on the other hand, rejected the idea of a "rock clause." Mr. Knapp asserted the area had been blasted, but he acknowledged he was not on the project at the time of the initial construction, when Mr. Biens was the construction manager.

Regarding the asphalt, Mr. Olderman testified that while he did not dispute the dollar amount allowed for completion of the topcoat, Oldsmith did not want to assume the responsibility of completing it. Rather, Oldsmith wanted Mosby to escrow the money and complete the work. This was because Oldsmith did not want to have to assume bonds for a roadway that had been partially constructed by Mosby, reasoning it would then become responsible for any defect of Mosby's creation. Mr. Knapp of Mosby agreed that if

[3] The parties also disagreed about the size of water taps covered under the contract.

- 4 -

Oldsmith took over the bond, it would be responsible for failures in Mosby's base layer, but he testified Mosby did not want to remain on the bonds because the timeline of construction was uncertain and would be determined by Oldsmith.

Oldsmith sought a $24,680 escrow for the retaining wall. Mr. Olderman testified that Mosby's estimate of $10,762 for the cost of the retaining wall was too low. Mr. Spangler of Hidden Valley stated that the retaining wall needed to be higher than Mosby's estimate in order to function, and that this would increase the costs. Mr. Knapp acknowledged at trial that Mosby's estimate from 2017 for a shorter wall would have been less than the actual cost to Oldsmith of constructing a wall, but he asserted that Oldsmith's bid was excessive because it was for a different type of wall, which was a poured-in-place wall with a brick face. According to Mr. Knapp, Mosby was not willing to escrow funds pending its post-closing completion of the work. He agreed that Mosby's position was that Oldsmith would have to agree to Mosby's proposed credits for the water taps, the wall, and the topcoat in order for the closing to proceed, per a July 10th email from Mosby's counsel.

While the parties were negotiating the terms, on June 19, 2019, Mosby sent a completion notice, asserting that its obligations were substantially complete under the contract and setting a closing date of July 9, 2019. Mr. Olderman testified that prior to receiving the completion notice, he was contacted by Mr. Knapp, who told him that Mosby was sending a notice to set the closing date and that the date was "hard." Mr. Olderman did not object to setting the closing date, so long as the parties could agree on the terms. He informed Mr. Knapp that while Oldsmith was willing to close as soon as possible, "We've got to get these items worked out."

The contract provided that closing would take place 20 days after the seller's notice, and that the purchaser would have five business days to object. An objection would have the effect of delaying closing:

> Subject to the terms of this Agreement, the consummation of the transactions contemplated by this Agreement (the "Closing") shall take place on the date that is twenty (20) days following substantial completion of the Work and the recording of the final plat of the Lots (such date, the "Closing Date") through an escrow at the offices of the Title Company. Seller shall provide Purchaser with written notice when Seller deems that Seller has substantially completed the Work and shall provide Purchaser with a copy of the recorded final plat for the Lots (the "Completion Notice"). Purchaser shall have five (5) business days after receipt of the Completion Notice to inspect and review the Lots and the draft of the final plat to be recorded at Closing. If Purchaser has any objections with respect to the Lots and/or the draft of the final plat to be recorded at Closing, Purchaser shall provide Seller with written notice of such objections within said five (5) business day period. To the extent that Purchaser has valid objections, the Closing Date shall be extended until

fifteen (15) days after the latter of (i) the date of Purchaser's notice of objections; or (ii) the date Seller remedies Purchaser's objections. Notwithstanding anything contained herein to the contrary, if the Closing has not occurred on or before April 1, 2018, then Purchaser shall have the right to terminate this Agreement by written notice to Seller at any time prior to Purchaser's receipt of the Completion Notice. If Purchaser terminates this Agreement as provided herein, all of the Earnest Money shall be returned to Purchaser by the Escrow Agent, whereupon neither party hereto shall have any further rights or obligations hereunder except for those provisions that survive the termination of this Agreement.

Oldsmith did not dispute that the work was substantially complete in writing within five days. Nevertheless, thereafter, on June 28, 2019, Oldsmith's attorney noted several outstanding issues, including the incomplete work and easements. Mosby responded on July 5th that Oldsmith had waived any objection to the completion notice, and Oldsmith replied that the notice was premature because Mosby was aware of the deficiencies, as the parties had been negotiating the outstanding items. Mr. Trent Lehman, Oldsmith's attorney, agreed that Oldsmith did not object to completion by June 26th and that the objection on June 28th did not itemize the incomplete work. However, Mosby did not contend between the time of this notice and the time closing was scheduled to take place that it was no longer responsible for the incomplete items. Instead, it continued to negotiate the terms of reassigning its obligations under the contract.

The parties had difficulty coming to terms. On July 8th, the parties exchanged emails in anticipation of closing, reflecting that the post-closing agreements were not finalized and that the parties still did not agree about the water taps and retaining wall. Oldsmith proposed that Mosby would escrow funds for these items and that Mosby would then complete the work post-closing. Mosby insisted that it would not reevaluate the credits because it did not feel it should be penalized if Hidden Valley used more expensive contractors.

Mr. Lehman sent a draft post-closing agreement on July 9th to address items the seller would complete after closing. The agreement called for Mosby to escrow funds, which would be released back to Mosby as the items were completed but which would protect the buyer if Mosby failed to complete the items. The contract contained a provision allowing the seller to remedy any failure which prevented development of the lots post-closing. At shortly before 5:00 p.m. on July 9th, Mr. Douglas Hale, Mosby's attorney, sent an email stating that the post-closing and escrow agreement was not acceptable to Mosby because "the items listed as being part of the 'Work' to be performed by the Seller post-closing were not timely objected to following delivery of the Completion Notice and will not be performed by the Seller." Mr. Hale offered to extend the Closing date until 3:00 p.m. on July 10th. Oldsmith disputed the validity of the completion notice, noting the parties were in ongoing discussions regarding the uncompleted work.

On July 10th, Mosby proposed eliminating escrows, under which Mosby would have set aside money to guarantee it would perform post-closing work, and to instead give Oldsmith credits against the amount due for purchase of the property under the contract. Mosby insisted that the closing go forward with Oldsmith receiving credits in the amounts proposed by Mosby, and it also demanded that Oldsmith pay $122,249.40 in Mallory Valley utility fees. When Oldsmith asked regarding the origin of the new Mallory Valley item, Mosby merely referred it to the original contract. At trial, the parties agreed that Mosby had been seeking $122,249.40 in reimbursement for fees it had never paid. Mosby had paid only approximately $20,000 of the fees. Mr. Knapp confirmed that Mosby was unwilling to escrow funds for post-closing completion of work. Mr. Lehman testified that Oldsmith did not want credits for completing the work but wanted Mosby to escrow funds and to complete the work post-closing. Both parties sent a default notice on July 10, 2019.

Subsequently, Oldsmith and Hidden Valley sued for breach of contract, quantum meruit/unjust enrichment, and a lien lis pendens, requesting specific performance, compensatory damages, and attorney's fees. Mosby countersued, alleging breach of contract, slander of title, and tortious interference with business relationships, and seeking declaratory judgment and to quiet the title.

Shortly after the failed closing, Oldsmith learned that on June 26th, Mosby's agent was marketing the property to third parties, seeking $1.5 million over the contract price and attaching plans that had been prepared by Oldsmith at its own expense. Mr. Christopher Finlay, the founder and CEO of Middleburg Communities, LLC, the parent company of Mosby, testified that Mosby had wanted to close on the sale but was shopping the property in case Oldsmith refused to close.

Under the contract, the buyer was limited to either return of the earnest money or specific performance in the event of the seller's breach:

> If Seller defaults in its obligation to consummate the transactions contemplated by this Agreement, Purchaser's sole remedies shall be either (a) to terminate this Agreement, in which event all of the Earnest Money shall be returned to Purchaser by the Escrow Agent, whereupon neither Party hereto shall have any further rights or obligations hereunder except for those provisions that survive the termination of this Agreement, or (b) to bring a suit for specific performance. Purchaser hereby waives any other rights or remedies for breach of any obligation to be performed at or before Closing. The limitation of damages set forth in this Section 9.2 shall not apply to any indemnities, covenants or obligations of Seller which expressly survive (or are to be performed after) either the termination of this Agreement or Closing, for which Purchaser shall be entitled to all rights and remedies available at law or in equity.

The contract further provided that Oldsmith could only assign its rights with prior written consent from Mosby, which consent would not be unreasonably withheld. Mr. Olderman testified that Mr. Spangler was involved with the project from the beginning. Mr. Spangler owned several companies, including ALTJ, LLC (ALTJ) and Hidden Valley. On March 14, 2019, Oldsmith assigned its interest in the contract to buy the townhome lots to ALTJ. According to the recitals, Mr. Spangler and Mr. Olderman had previously created ALTJ Oldsmith, LLC, contributing in equal shares to the earnest money, but they agreed in the assignment to terminate that entity. The March assignment provided that the contract would be assigned to ALTJ. Subsequently, on May 14, 2019, ALTJ assigned its interest to Hidden Valley in an amendment to the assignment. This amendment was not executed by Hidden Valley, which was to undertake the assignor's responsibilities. Mr. Spangler testified that he paid Oldsmith around $149,568.67 for the assignment.

The testimony at trial was that Mosby was not aware that either of these documents had been executed until after the lawsuit began. However, the evidence also demonstrated that Mr. Spangler of Hidden Valley had been "on the ground" and involved in the project since the beginning. Mosby's witnesses, however, testified they believed he was the general contractor and not a purchaser of the property.

After the execution of the two assignments but prior to the scheduled closing, Mosby was informed that Oldsmith wished to assign its interest to Hidden Valley at closing. Mr. Lehman, Oldsmith's closing counsel, identified two June 21, 2019 emails in which he informed Mosby's counsel that the "ultimate buyer" who would sign the documents would be Hidden Valley. On June 28, 2019, Oldsmith sent Mosby a draft assignment in which Oldsmith would assign the contract to Hidden Valley. This assignment made no reference to the prior assignments either executed or partially executed by Mr. Olderman and Mr. Spangler. On July 8, 2019, Mosby's agent Austin Knapp responded to some inquiries posed by Oldsmith. Regarding "Assignment," Mr. Knapp wrote, "Same comment as the plan approval." The plan approval comment was, "It looked good to me. Doug [Hale, Mosby's attorney] is reviewing for final approval but it will be signed tonight barring no comment from him." Mr. Hale commented on the draft assignment, which was substantially similar to the earlier-executed assignments, by asking for certain changes: "Please cause the same to be revised to provide for the continued liability of the Purchaser and the express assumption by Hidden Valley of the Purchaser's rights and obligations thereunder and the comprehensive signature block for Mosby." A redline of the draft assignment shows that Mosby inserted language that Hidden Valley would "assume" the assignment. On July 9th, Mosby's counsel sent Oldsmith's counsel an email noting that Mosby had revised the deed "to show Hidden Valley Homes, LLC as the grantee" and had made Hidden Valley the beneficiary of the sign and parking easements. Attached to the email was a copy of the Declaration of Covenants, Conditions, Restrictions, and Easements reflecting that Hidden Valley was the owner and signed by Christopher Finlay, Mosby's Managing Partner. Mosby's counsel also told Oldsmith, "Our

client has approved and executed all transfer documents . . . ." Mosby's counsel sent Oldsmith a copy of the drafted assignment and deed, and Oldsmith's counsel responded, "They are both fine."

During litigation, the parties disputed whether Hidden Valley was entitled to assert claims against Mosby. In December 2019, Mosby moved for summary judgment against Hidden Valley on the basis that it was not properly a party to the case and did not have standing to bring a claim against Mosby. Relying on the affidavit of its manager, Christopher Finlay, Mosby argued that it had not given the prior written consent required by the contract, and that Hidden Valley accordingly had no contractual rights, privity of contract, or standing to bring a claim against Mosby. Oldsmith disputed that Mosby had not provided written consent, noting that all parties were aware soon after the contract was executed that Hidden Valley would be a party, pointing to Mosby's direct communications with Hidden Valley, including email correspondence in October 2018. Oldsmith asserted that Mosby's agents assisted in drafting the assignment to be executed at closing and that Mosby gave consent in July 2019, after the assignment had taken place. Mosby replied that the email approval was conditional and came after the assignment, in violation of the contract.

In March 2020, the trial court granted the motion for summary judgment as to Hidden Valley's claims, concluding that Hidden Valley had no privity of contract and no standing to bring claims against Mosby. The order included a statement that "this judgment shall be and is a final judgment against Hidden Valley, on Hidden Valley's claim(s) against Mosby, pursuant to Tenn. R. Civ. P. 54.02, upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Hidden Valley and Oldsmith did not appeal this judgment. Hidden Valley remained a defendant against Mosby's counter-claims. The trial court denied summary judgment on the underlying claims, concluding that there was a genuine issue of material fact regarding whether the parties reached an agreement altering Mosby's scope of work under the contract.

On February 14, 2020, between the filing of the motion for summary judgment and the trial court's ruling dismissing Hidden Valley, Mosby sold the apartment complex property to a third party. The sale included the mis-platted Lot 3 common area, which was now a part of Lot 2. No easements had been recorded on Lot 2, leaving the Lot 3 area platted for townhomes landlocked with no potential for development.

The parties began trial in December 2021. After substantial proof regarding the early involvement of Hidden Valley, the trial court questioned whether it should set aside its earlier order and whether the third-party owner of Lot 2 should be made a party to the proceedings.

Oldsmith attempted to offer testimony regarding damages it would suffer should

Mosby be unable to perform under the contract. Mr. Olderman testified that Oldsmith made initial projections in 2017 but that he and Mr. Spangler of Hidden Valley had updated the projections and that Mr. Spangler would have greater personal knowledge regarding damages. Mr. Olderman testified that Oldsmith would have closed had Mosby agreed to the post-closing agreement. Confronted with the Plaintiffs' answers to interrogatories, Mr. Olderman acknowledged that most of the $133,782 expended was expended by Hidden Valley.

The court then addressed remedies, given Mosby's conveyance of the common area. Mosby and Oldsmith agreed that damages might be appropriate, even though specific performance was the exclusive remedy under the contract:

> [Oldsmith's counsel]: . . . And what we would — what we envision is Your Honor award — what we'd like is for Your Honor to award specific performance and give Mosby a period of time to achieve it. And if they don't within the period of time, award damages as an alternate remedy. That's the only remedy that becomes available because they can't perform.

> [Mosby's counsel]: Yeah. That's what we would propose.

Mr. Spangler provided testimony that Hidden Valley would suffer $12.2 million in damages if specific performance could not be obtained. He agreed that he was not given any records regarding Oldsmith's losses in particular and that he could not say how much of the $12.2 million loss could be ascribed to Oldsmith. He testified that, regarding the damages sought in the complaint by Oldsmith, Hidden Valley had paid fifty percent of the approximately $163,000 expended on the project by the Plaintiffs, based on an agreement with Mr. Olderman.

Prior to the continuation of the trial, the Plaintiffs moved to set aside or revise the March 2020 order dismissing Hidden Valley as a plaintiff in the case. Hidden Valley noted that the first trial dates had clarified that Mosby was always aware of the assignment and that Hidden Valley was listed on closing documents. Arguing that the order did not meet the criteria for a final order under Rule 54.02 and that the initial certification as a final judgment under Rule 54.02 was invalid, Hidden Valley asked for its claims to be reinstated. Hidden Valley argued that the counterclaim Mosby was asserting for slander of title overlapped with its own claims that had been dismissed under the summary judgment order. Alternatively, Hidden Valley sought relief under Rule 60.02, arguing extraordinary circumstances warranting equitable relief existed in Mosby's mis-platting the common area, conveying away the common area during the pendency of the suit, and obtaining dismissal of Hidden Valley's claims despite Mosby's consent to assignment. Oldsmith noted that at the time of the dismissal, the Plaintiffs were unaware that the property had been sold and felt the dismissal was of minimal import because they sought specific performance and did not anticipate proving damages, and they argued Mosby's thwarting

of specific performance weighed in favor of Rule 60 relief.

Mosby opposed the motion. Noting that trial had begun, Mosby asserted that it had already "presented its defense-in-chief" testimony and that Hidden Valley "failed to take an interlocutory appeal." It noted that Oldsmith and Hidden Valley had attached emails relevant to the motion for summary judgment and that Oldsmith's pretrial brief did not premise any relief on the rights of Hidden Valley. Mosby argued that the prior order was proper under 54.02 and that the failure to file a "timely interlocutory appeal" meant that Hidden Valley could not challenge the judgment. Mosby asserted that the question of whether the assignment was proper had been finally settled in favor of Mosby. Mosby asserted that the parties all had the relevant documents regarding assignment at the time of the summary judgment motion. It also argued that relief was not proper under Rule 60.02 and that Hidden Valley had failed to timely appeal the 54.02 order. It asserted that Oldsmith had been paid for the assignment of the contract and no longer had interest in it. Mosby asserted that it would have changed its trial strategy had Hidden Valley continued as a plaintiff.

On May 18, 2022, the trial court granted relief under rule 54.02. The court noted that a trial court's certification of a judgment as final was not binding on the appellate court. Weighing the factors relevant to whether there is no just reason for delay, the trial court concluded it had erred in its prior Rule 54.02 analysis:

> [T]he Court finds that the March 17, 2020 Order should not have been certified as final pursuant to Rule 54.02 and that it never became a final judgment. Both the adjudicated and the unadjudicated claims arise out of the same factual issues. Specifically, the Court's judgment of Hidden Valley's claims directly impacts the merits of Mosby's counterclaim for slander of title as Mosby must prove that Hidden Valley "published false statements about the title to the property." . . . The Court has effectively placed itself in a position where it will have to consider the same issues at trial that were present the time it ruled on the summary judgment motion. Further, assuming that the March 17, 2020 Order had become final and was appealed, the Tennessee Court of Appeals would be required to review the same operative facts in two different settings, which is disfavored in Tennessee.

The trial court ultimately concluded "that the March 17, 2020 Order never became a 'final judgment' and is thus an interlocutory order." The court relied on the language in the Rule that an order that adjudicated fewer than all claims between the parties was subject to revision at any time. *See* Tenn. R. Civ. P. 54.02. The court then found that the order should be amended pursuant to Rule 59.04 to correct a clear error of law and prevent injustice. In so concluding, the court noted that the evidence showed that "Mosby was fully aware" of Hidden Valley's involvement. Observing that "there is an argument that Hidden Valley had a valid interest in the property," the court noted that its ruling would

- 11 -

prevent Hidden Valley from presenting a defense to the counterclaim, and it concluded that summary judgment had been granted in error in the face of a genuine dispute of material fact. The court specifically pretermitted a Rule 60.02 analysis. Mosby sought a continuance and permission to file an interlocutory appeal; the court denied the motion for interlocutory appeal but ruled that, while trial would continue on the previously agreed-upon June dates, it would permit Mosby to schedule additional trial days if necessary.

At the continuation of trial, Mr. Finlay noted that building the townhomes would be a benefit to the apartment complex property and that he was confident Mosby would be able to acquire the necessary easements from the current owner.

Employees from Hidden Valley testified regarding the damages estimate. Hidden Valley's general manager during the time, its accounting manager, and an accounts payable employee did not create the exhibit detailing the losses. The accounting manager noted that Hidden Valley had paid designer and vendor fees and requested half the amount from Mr. Olderman. She testified that some of the costs incurred were incurred by ALTJ Oldsmith and others by Hidden Valley, and that Mr. Spangler and Mr. Olderman were paying the vendors. Hidden Valley introduced the testimony of Mr. Spangler's daughter, a CPA and realtor and broker, who created the damages estimate. Mosby introduced evidence through a forensic accountant that the damages calculation was speculative.

At the close of proof, Mosby's attorney again suggested that "specific performance is not something that is out of the question." However, Mosby's attorney also stated he was not suggesting that Mosby "would ever agree there should be damages."

In the wake of the bench trial, the trial court made extensive and detailed findings of fact. The trial court found that Oldsmith had assigned its interest to ALTJ on March 14, 2019, and that Mosby was not aware of the assignment between Oldsmith and ALTJ. On May 14, 2019, ALTJ assigned its interest to Hidden Valley. Mosby was informed on June 21, 2019, that Hidden Valley would be the buyer and received a draft assignment on June 28th. On July 8, 2019, Mosby sent Oldsmith a copy of the proposed assignment, asking for a revision to provide continued liability of Oldsmith and express assumption by Hidden Valley of the rights and obligations. On that same date, Mr. Finlay executed the covenants, conditions, and restrictions containing the easements, which identified Hidden Valley as the owner. On July 9th, the parties corresponded regarding the assignment and both parties approved. The court also found that Oldsmith assigned its rights to Hidden Valley with Mosby's consent.

Regarding the common area, the trial court found that the plat failed to separate it from the remainder of the parcel but that the court could not determine whether the surveyor "made an error or whether Mosby instructed" the company to keep the common area with Lot 2. The court found that the parties agreed to a "workaround" consisting of easements. The trial court found that Mosby began secretly marketing the property to third

parties at a substantial increase in price on May 31, 2019. It also found Mosby sent Oldsmith's townhome design plans to a potential third-party purchaser on June 26, 2019. On February 13, 2020, Mosby conveyed Lot 2 and the Lot 3 common area to a third party.

Regarding the incomplete items, the trial court found that Mosby would have been responsible for the removal of any rock it encountered in installing the water taps. The court further found that Mosby's proposed credit of $10,762 for the retaining wall was insufficient and based on outdated information and that the only evidence regarding the actual cost was Hidden Valley's estimate. The trial court noted that Mr. Knapp represented that the rock had been overblasted but that Mr. Beins, who unlike Mr. Knapp was involved in the project during that stage, was unsure if the rock was overblasted. The trial court found that the completion notice was sent on June 19, 2019, and that Oldsmith did not object within five days. However, on June 28, 2019, Oldsmith noted several issues, including the incomplete work and easements. The court found that Oldsmith did not agree to the amount of credit Mosby offered Oldsmith in exchange for assuming Mosby's contractual obligations for the wall and water taps. Oldsmith was also unwilling to pay Mosby for the Mallory Valley fees because there was no evidence they had been paid. The court found that Mosby's attempt to collect $122,249.40 was improper and fraudulent because it had not actually been paid beyond $20,000 and because the amount was contemplated to change at the time of the contract.

Regarding the alleged breach by Oldsmith — the assignment — the court found that the interim assignment to ALTJ was harmless as to Mosby. The court further found that the property was not substantially complete at the time of the June 19, 2019 notice and that Mosby was "fully aware" of the deficiencies, including the retaining wall, the water taps, the topcoat, the nonpayment of Mallory Valley fees, and the incorrect platting necessitating easements. The court concluded that the notice was not sent in good faith. It further noted that a failure to object was not waiver of completion but only affected the closing date. Regarding the claim that the Plaintiffs breached by failing to close, the trial court found that Mosby made closing impossible by insisting that the Plaintiffs assume Mosby's contractual obligations but failing to reach an agreement regarding the compensation Plaintiffs would receive.

Instead, the court found Mosby breached the agreement by failing to develop the lots in accordance with the agreement. In particular, the court found Mosby failed to install the water taps, failed to install the retaining wall, was unwilling to retain responsibility for the topcoat of asphalt,[4] and mis-platted the property and failed to provide the easements that became necessary after the mis-platting.

---

[4] We note that Mosby's assertion that the trial court found it in breach for failure to "(4) obtain a maintenance bond" is a misreading of the order; the court found Mosby in breach because it was unwilling to remain on the bond for the asphalt topcoat.

- 13 -

The trial court also found that the Plaintiffs sought primarily specific performance but alternatively had presented evidence of $12,211,075 in damages. The court found in favor of the Plaintiffs' expert that the damages were established and disagreed with Mosby's expert that the lost profits were speculative, unsupported, or unreliable. However, the court relied on Mr. Finlay's testimony that the third-party buyer would "agree to some sort of access" to permit development of the lots. The court determined it would award specific performance. It noted that if it had the authority to award damages and if the claim to specific performance were abandoned, it would have awarded the amount proven at trial. However, the court found that specific performance was actually available based on Mosby's representations. The court noted that the Plaintiffs had requested damages as an alternative if Mosby were unable to perform, and that Mosby acquiesced to this proposal. The court found that "Mosby's conduct should not be condoned" by limiting damages to the return of earnest money, observing Mosby had "done everything in its power to avoid" its obligation to develop the property. The court elaborated:

> When Mr. Olderman discovered the error with the revised recorded plat, if it was truly an error, Mosby refused to make the necessary corrections. When the parties created a workaround using easements, Mosby marketed the property to third parties. Mosby issued its Completion Notice knowing it had not fulfilled its contractual obligations to develop the property according to the plans. Mosby attempted to shift its contractual obligations to the Plaintiffs and without contractual authority demanded that the Plaintiffs accept Mosby's proposed, outdated, and in the case of the $122,249.40 claim for Mallory Valley fees, fraudulent, credits. When the Plaintiffs would not agree to Mosby's terms, Mosby refused to close. This was after Plaintiffs spent substantial resources on the project, including time and money. Finally, during the midst of this litigation, Mosby sold a portion of the subject property to a third party.

The court gave Mosby 90 days to perform. It stated it would entertain a petition for civil contempt if Mosby failed to perform and "will award the Plaintiffs damages in the amount of $12,211,075."

The trial court also denied Mosby's slander of title and tortious interference with business relationships claims and granted the lien lis pendens. The trial court stated it would award attorney's fees under the contract.

Mosby filed a motion to alter or amend. Mosby asserted that the court erred in reinstating Hidden Valley as a plaintiff, in finding that Oldsmith did not materially breach the contract by assigning its interest to ALTJ and by failing to object to the completion notice, and in denying Mosby relief on its counterclaims. It also asserted error in damages, objecting to the court's statement regarding a potential $12,211,075 judgment for contempt, to the court's conclusion that such damages were established for each party by

- 14 -

evidence, and to awarding damages to Hidden Valley. It also requested a stay of the judgment pending any future appeal. Oldsmith opposed the motion, except insofar as it sought a stay pending appeal. However, Oldsmith disputed Mosby's proposed bond and asserted the proper amount would be the potential damages award.[5]

The court denied the motion to alter or amend, finding that the assignment was not a material breach but "a peripheral issue that had been resolved prior to closing," and that the parties failed to close because Mosby failed to complete the work it was obligated to complete, sought approximately $100,000 for Mallory Valley fees it had not even paid, mis-platted the property, and had refused to complete its obligations through a post-closing agreement. The court further found that it was not required to apportion damages between the two Plaintiffs.

The trial court granted the Plaintiffs attorney's fees under the contract, noting that the Plaintiffs were the "prevailing party" under the contract because they had made Mosby a settlement offer that qualified them to be the prevailing party under the contractual definition. The court awarded $290,754.32 in attorney's fees.

On appeal, Mosby seeks review of the trial court's reinstatement of Hidden Valley under Rule 54.02, asserts it is entitled to a new trial based on the foregoing error, argues that Oldsmith committed the first material breach and is estopped to contend otherwise, and challenges the trial court's determination of damages relative to a potential contempt. Oldsmith argues Mosby is not entitled to relief and requests attorney's fees on appeal.

## II. Standard of Review

We review findings of fact in a bench trial de novo on the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Determinations regarding witness credibility are entitled to great weight, as the trial court has the advantage of observing the demeanor and live testimony of witnesses. *Massey v. Casals*, 315 S.W.3d 788, 793-94 (Tenn. Ct. App. 2009). Credibility determinations will not be disturbed on appeal absent concrete, clear, and convincing evidence to the contrary. *Demers v. Demers*, 149 S.W.3d 61, 70 (Tenn. Ct. App. 2003). Questions of law are reviewed de novo with no presumption of correctness. *Massey*, 315 S.W.3d at 794. Mixed questions of fact and law are reviewed de novo, with a presumption of correctness accorded

---

[5] The evidence at trial was that Mosby's parent company is Middleburg Real Estate Partners. Noting that Mosby might be a single-purpose entity and that it had already conveyed the common area to a third party, the court required Mosby to post bond in the amount of $13,500,000, representing the damages, attorney's fees, and interest, "rounded" up. This court granted a Tennessee Rule of Appellate Procedure 7 motion for review of an order and vacated the bond, remanding for the court to determine an amount necessary to secure obedience of the judgment and payment for the use, occupancy, detention and damage or waste of the property from the time of appeal until delivery of possession of the property and costs on appeal. *See* Tenn. Rule of Civ. Pro. 62.05(2).

to the factual findings. *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006).

## III. Reinstatement of Hidden Valley

### A. Tennessee Rule of Civil Procedure 54.02

Mosby argues that the trial court had no authority to set aside its summary judgment ruling in its favor as to Hidden Valley's claims against Mosby. The Plaintiffs counter that the finality certification was invalid because the judgment did not actually meet the criteria for finality.[6] The court initially ordered that the dismissal be entered as a final judgment, and it included a determination that there was no just reason for delay. Hidden Valley and Oldsmith did not appeal this judgment.

The trial court set aside the order two years after its entry, reasoning that the summary judgment order had adjudicated "fewer than all the claims or the rights and liabilities of fewer than all the parties" and was accordingly "subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." *See* Tenn. R. Civ. P. 54.02(1). The trial court relied on the fact that a certification of a final judgment under Rule 54.02 is not binding on an appellate court, and reviewing its own decision, the trial court determined that the requirements for a final judgment were not met. It concluded that because the judgment should not have been certified as final, the time for appeal never accrued and the motion to revisit the order was timely.

We note here that the initial question before us is not whether the ruling met the requirements to be certified a final judgment but whether there is error in the procedural mechanism the trial court used to revisit the order. According to the Plaintiffs, Rule 54.02 was a proper mechanism to set the judgment aside if the certification was initially flawed, whereas according to Mosby, the judgment became final when it was not appealed or otherwise challenged within thirty days.

Rule 54.02(1) provides:

---

[6] Mosby contends that *Discover Bank v. Morgan*, 363 S.W.3d 479 (Tenn. 2012), is dispositive of the 54.02 ruling, asserting that it sets up the procedure for challenging a final judgment under the Rule. However, in *Morgan*, the 54.02 judgment was a default judgment that was never certified as final, and the Tennessee Supreme Court concluded that the proper mechanism to challenge the nonfinal default was under Rule 54.02. *Id.* at 489-90. The Court explained in a footnote that "[w]hen a trial court certifies a judgment as final pursuant to Rule 54.02, motions seeking relief from that judgment should be premised upon Rule 59, if filed within thirty days of its entry, and upon Rule 60, if filed more than thirty days after its entry." *Id.* at 488 n.18. However, the *Morgan* Court did not address the argument raised by the Plaintiffs here: that an improper certification under the Rule defeats finality. *See id.*

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Tenn. R. Civ. P. 54.02(1). In reaching its conclusion, the trial court relied on the language stating that an order adjudicating fewer than all claims is "subject to revision at any time" in determining it would revise the judgment.

Generally, a judgment becomes final thirty days after it is entered, absent an appeal or certain specified motions. *Creech v. Addington*, 281 S.W.3d 363, 377 (Tenn. 2009). Once a judgment is final, a court generally loses jurisdiction to amend it. *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991). Additionally, "jurisdiction to modify a final judgment cannot be grounded upon waiver or agreement by the parties." *Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Sys. of the Midsouth, Inc.*, 266 S.W.3d 421, 425 (Tenn. Ct. App. 2007) (quoting *Moore*, 814 S.W.2d at 382).

When a trial court directs the entry of a final judgment as to one or more but fewer than all of the claims or parties and makes an express determination that there is no just reason for delay, "[s]uch certification by the trial court creates a final judgment appealable as of right." *In re Est. of Henderson*, 121 S.W.3d 643, 646 (Tenn. 2003); *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 325 & n.1 (Tenn. 1982) (examining a previous statutory provision, noting it was identical to Rule 54.02 and concluding that an order which the court did not expressly certify as final was subject to revision). Conversely, "[i]n the absence of an express direction of the court to the contrary, a judgment that disposes of only some of the claims, issues, or parties is not a final judgment and is subject to revision by the court at any time before the entry of a final judgment adjudicating all claims and the rights and liabilities of all parties." *Creech*, 281 S.W.3d at 377. The requirements of Rule 54.02 have been strictly construed. *Varney v. Stooksbury*, No. E2018-01812-COA-R3-JV, 2020 WL 2950555, at *4 (Tenn. Ct. App. June 3, 2020).

Initially, we note that the language relied on by the trial court for the proposition that an order adjudicating fewer than all claims is subject to revision at any time prior to a final judgment is qualified by a limiting phrase. Such orders are subject to revision "at any time" during the pendency of the case only "[i]n the absence of" a "determination that there

is no just reason for delay and upon an express direction for the entry of judgment." Tenn. R. Civ. P. 54.02(1). Here, however, the trial court expressly directed a final judgment and determined there was no just reason for delay. Accordingly, there is no authority in the plain language of Rule 54.02 allowing the trial court to revisit its determinations two years later. Thus, the trial court's reliance upon the express language of 54.02 is misplaced.

That was not the only basis though of the trial court's ruling. The trial court also relied on the fact that an appellate court is not bound by the finality determination of a Rule 54.02 determination in its inquiry into appellate jurisdiction. It is true that "the mere recitation that an order is final, without more, does not, *ispo facto*, bestow jurisdiction on us over an otherwise interlocutory order." *Cooper v. Powers*, No. E2011-01065-COA-R9-CV, 2011 WL 5925062, at *5 (Tenn. Ct. App. Nov. 9, 2011); *see, e.g.*, *Roberts v. Kentucky Nat'l Ins. Co.*, No. W2023-01524-COA-R3-CV, 2025 WL 1147573, at *8 (Tenn. Ct. App. Apr. 16, 2025) ("Based upon our review of the relevant factors, which the trial court failed to consider in its order, we conclude that the trial court's order dismissing only four defendants was improvidently certified as final and therefore dismiss the appeal for lack of subject matter jurisdiction."); *Coleman v. Tenn. Bd. of Parole*, No. M2016-00410-COA-R3-CV, 2016 WL 6248027, at *7-8 (Tenn. Ct. App. Oct. 25, 2016) (sua sponte certification without considering factors was inappropriate).

However, any judgment entered by any trial court could potentially contain an error of law that would merit reversal on appeal. Such error does not, in itself, render such a judgment reversible absent the party actually filing an appeal or the invocation of some other proper mechanism to set the judgment aside. In other words, the fact that an erroneous certification does not bestow appellate jurisdiction does not necessarily render that judgment a nullity. Accordingly, the mere existence of a potential error in the order which certified the judgment as final did not authorize the trial court to revisit the order two years later under the mechanism of Rule 54.02, which only allows the revision "at any time" of those judgments that have not been designated as final. This one was so designated.

The Plaintiffs argue, however, that the 2020 certification was in error and that federal caselaw supports the proposition that a court can revisit a judgment designated final under Rule 54.02 if the designation was in error. Tennessee caselaw does suggest federal law may be helpful in interpreting the Rule: "[s]ince Tenn. R. Civ. P. 54.02 is substantially identical to Fed. R. Civ. P. 54(b), federal court opinions are considered persuasive authority in construing Rule 54.02." *Brown v. John Roebuck & Assocs., Inc.*, No. M2008-02619-COA-R3-CV, 2009 WL 4878621, at *5 (Tenn. Ct. App. Dec. 16, 2009) (citing *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 557 (Tenn. 1990)) (noting that review of whether the ruling disposes of a separate claim is de novo, while review of the finding that there is no just reason for delay is for abuse of discretion).[7]

---

[7] The relevant Federal Rule provides as follows:

There is some support for the Plaintiffs' assertion that an invalid certification renders the judgment nonfinal. *See Acha v. Beame*, 570 F.2d 57, 62 (2d Cir. 1978) ("Thus a partial or interlocutory adjudication of a claim cannot properly be certified, even if this is attempted by means of a 'partial summary judgment' and even if the requisite 'express determination' has been made."); *Page v. Preisser*, 585 F.2d 336, 337-38 (8th Cir. 1978) (holding that "when a district court erroneously certifies a claim as appropriate for immediate appeal under Rule 54(b), a party may raise that claim in a timely appeal from an adverse decision on the remaining claims in the lawsuit"); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1108 (10th Cir. 2001).

However, the weight of federal authority runs contrary to the Plaintiffs' argument. Reflective of the contrary weight, two prominent federal treatises conclude that an appeal must be taken immediately. *See* 10 James W. Moore et al., Moore's Federal Practice § 54.26[1] (3d ed. 2012) ("A Rule 54(b) judgment begins the running of the time to appeal regardless of the propriety of the entry of that judgment. In other words, whether or not the court abused its discretion in entering judgment is irrelevant to the parties' obligation to timely appeal."); 15A Charles A. Wright et al., Fed. Prac. & Proc. Juris. § 3914.7.1 (3d ed.) ("The various purposes that may prompt entry of judgment under Rule 54(b) all suggest that the right to review should be lost if appeal is not taken within the ordinary appeal time rules as measured from the entry of judgment."). Wright notes that "a party who believes that judgment was improperly entered would be better advised to take a protective appeal and urge that the appeal be dismissed." *Id.*

Multiple federal decisions are in accord with this approach. *See, e.g.*, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 355 (2d Cir. 2011) (concluding, where the party incorrectly assumed the judgment was a nullity, that "a judgment expressly certified as final under Rule 54(b) is no less final for omitting a statement supporting a determination that there is no reason for delay"); *A-1 Amusement Co., Inc. v. United States*, 15 F. App'x 777, 781 (Fed. Cir. 2001) (concluding that although the party argued "that the judgment on count 1

---

**(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

should not have been entered pursuant to Rule 54(b)," the appeal was untimely because "[t]he time to challenge that entry, on whatever ground, has passed"); *In re Lindsay*, 59 F.3d 942, 951 (9th Cir. 1995) (noting that "[a] Rule 54(b) judgment does not give the prospective appellant an election to appeal at that time or later" and that "[a] Rule 54(b) determination, right or wrong, starts the time for appeal running"); *see also Johnson v. Ocwen Loan Servicing, L.L.C.*, 916 F.3d 505, 508 (5th Cir. 2019) (not deciding the issue but noting, "we have doubts that an appeal of the final judgment allows a collateral attack on the propriety of a Rule 54(b) judgment from which an appeal was not taken. When dismissing untimely appeals of Rule 54(b) judgments, we have never evaluated a judgment's validity."); *Tyrues v. Shinseki*, 732 F.3d 1351, 1357 (Fed. Cir. 2013) (citing *In re Lindsay* with approval and applying its reasoning to 38 U.S.C. § 7266(a) because "the appellate tribunal may decide not to proceed with the appeal (on request or sua sponte), but the appeal must be filed"); *Speer v. City of Wynne, Arkansas*, 276 F.3d 980, 988 (8th Cir. 2002) (appeal filed two years after 54(b) certification was untimely where certification was not challenged).

Likewise, several state courts that have considered the matter have required an appeal of an improvidently certified final judgment under analogous rules. *Wallace v. Belleview Props. Corp.*, 120 So. 3d 485, 490-91 (Ala. 2012) ("[W]e believe that the better course is to require that a party seeking to challenge the propriety of a Rule 54(b) certification do so in a timely appeal from the certified judgment" because "[t]o allow a later appeal of a judgment certified as final pursuant to Rule 54(b) in those circumstances in which a party desires to argue that the certification was improper injects uncertainty regarding the time to appeal and the finality of judgments"); *Jacquot v. Rozum*, 790 N.W.2d 498, 505 (S.D. 2010) ("[T]he trial court, right or wrong, certified its order granting all the defendants' motion for summary judgment on the issue of punitive damages as final under Rule 54(b) on September 14, 2009, and the [plaintiffs] should have appealed that judgment in October 2009."); *Clark v. Archer*, 242 P.3d 758, 761 (Utah 2010) ("We make no judgment as to whether the district court's rule 54(b) certification was proper in Mr. Archer's case, but hold that, right or wrong, the certification started the appeal clock running."); *but see Contractors Edge, Inc. v. City of Mankato*, 863 N.W.2d 765, 774 (Minn. 2015) ("We agree with the reasoning of these courts and conclude that erroneously certified orders, including orders certified in an abuse of discretion, do not result in appealable final judgments.").

These courts have reasoned that while a trial court may err in its determination to certify a judgment as final under Rule 54.02, such an erroneous determination must be challenged via appeal or a timely motion for reconsideration. After all, "[a] court's authority to make a decision and the correctness of that decision are two different things." *Wallace*, 120 So. 3d at 494-95 (Murdock, J., concurring) ("A court with authority to decide may err, but, unless the error is recognized and addressed pursuant to applicable procedures, including any temporal restrictions that are part of those procedures, the court's decision will stand."). Allowing post hoc challenges to settled final judgments would lead

to uncertainty, *id.* at 490-91, particularly where a party may have begun to act or execute on a judgment which was, to all appearances, final. As the concurrence in *Wallace* observed,

> [w]hen an appeal is not taken, that judgment becomes "final" and "res judicata" in the same sense as does any final judgment from which no appeal is taken. Having entered a final judgment finding that the adjudicated claim is *not* intertwined with remaining claims and that the adjudication of the claim *is* appropriate for certification, and no appeal having been taken from that judgment, the trial court is in fact prevented from later changing its mind and trying to undo what it has already made final. Such is the nature of a "final judgment."

*Id.* at 499, 501 (concluding, "A judgment is either final or it is not. The law does not have two types of finality, one brand of finality for purposes of being able to execute upon a judgment and another brand of finality for purposes of appealability."); *see Contractors Edge, Inc.*, 863 N.W.2d at 780 (Lillehaug, J., dissenting) (asserting that the majority had created a category of "mostly final" judgments valid on their face but subject to being "miraculously resuscitated for appeal after the time for review has expired").

Based on the language of Rule 54.02, and in accord with the reasoning of most cases and treatises, we conclude the Plaintiffs' failure to address the dismissal of Hidden Valley within thirty days precluded the trial court from revisiting the order. The reinstatement of Hidden Valley under Rule 54.02 was error.[8]

### B. Rule 60.02

The Plaintiffs also argue in the alternative that they were entitled to have the prior judgment set aside under Tennessee Rule of Civil Procedure 60.02. The trial court expressly pretermitted the question of whether relief was justified under this Rule, noting that its 54.02 determination, which we have concluded was in error, made the analysis of

---

[8] Although it stated that the summary judgment order dismissing Hidden Valley's claims was never final, the trial court also, however, relied on the legal standards applicable to Rule 59.04 as authority for setting aside a final order. Evaluating the standards applicable to the Rule, the trial court concluded that the order should be set aside to correct a clear error of law or prevent an injustice. *See Kirk v. Kirk*, 447 S.W.3d 861, 869 (Tenn. Ct. App. 2013) ("The motion should be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice. A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005) (citation omitted))). The plain language of Rule 59.04, however, mandates that "[a] motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment." Tenn. R. Civ. P. 59.04. Accordingly, Rule 59.04 was also not a proper vehicle to revisit its final order. The Plaintiffs do not defend the trial court's decision under Rule 59.04.

relief under Rule 60.02 unnecessary.

Under Tennessee Rule of Civil Procedure 60.02,

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P. 60.02.

At issue in the present case is only subsection (5), "any other reason justifying relief from the operation of the judgment." *Id.* Generally, such a determination is reviewed for abuse of discretion. *In re Joeda J.*, 300 S.W.3d 710, 714 (Tenn. Ct. App. 2009). The appellate court may analyze whether reasonable minds can disagree as to the outcome. *Id.*; *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) ("Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000))).

The Plaintiffs argue that reinstatement of Hidden Valley is justified because Mosby's sale of the common area without easements may have made specific performance impossible and because Mosby argued that Oldsmith's assignment of the contract limited its damages.

Rule 60.02 requires the party seeking relief to meet the listed criteria of the Rule.

- 22 -

*NCNB Nat. Bank of N. Carolina v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993). The Rule is intended to balance the competing principles of finality and justice. *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005). "Despite its extremely broad language, Tennessee Rule of Civil Procedure 60.02(5) has been construed very narrowly by Tennessee Courts." *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992). In order to preserve finality of judgments, "Rule 60.02 is an 'escape valve' that should not be easily opened." *Thrailkill*, 856 S.W.2d at 153. Instead, it "is intended to provide relief only in the most compelling, unique, exceptional, and extraordinary circumstances." *DeLong*, 186 S.W.3d at 512. The standards of Rule 60.02(5) are even "more demanding" than the standards meriting relief under the other subsections of Rule 60.02. *Thrailkill*, 856 S.W.2d at 154. "It is, as a general rule, applicable to situations that are not covered by the other clauses in Tenn. R. Civ. P. 60.02 or to cases of extreme hardship." *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. Ct. App. 1990).

Significantly for this case, Rule 60.02 "is not for the purpose of relieving a party from free, calculated, and deliberate choices the party has made. A party remains under a duty to take legal steps to protect his own interests." 11 Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2864 (3d. 2025); *see Steioff*, 833 S.W.2d at 97 (citing 11 Fed. Prac. & Proc. Civ. § 2864 (1973)); *see DeLong*, 186 S.W.3d at 512; *Beason v. Beason*, 120 S.W.3d 833, 840-41 (Tenn. Ct. App. 2003) ("Even under the frustrating factual and procedural situation of this case, we hold that the motion was not made within a reasonable time when it was filed over twelve years after the entry of the final judgment."). "Rule 60.02 does not 'permit a litigant to slumber on her claims and then belatedly attempt to relitigate issues long since laid to rest.'" *Henderson v. Wilson*, No. M2009-01591-COA-R3-CV, 2011 WL 683905, at *3 (Tenn. Ct. App. Feb. 25, 2011) (quoting *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990)); *Ball v. Shockley*, No. W2009-01774-COA-R3-CV, 2010 WL 3984727, at *5 (Tenn. Ct. App. Oct. 12, 2010) (strategic decision not to oppose summary judgment was insufficient basis for 60.02(5) relief).

In particular, the choice to forego an appeal may preclude Rule 60 relief. *See* 11 Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2864 (3d ed.) ("In particular, it ordinarily is not permissible to use a Rule 60(b)(6) motion to remedy a failure to take an appeal."). In *Federated Ins. Co. v. Lethcoe*, the Tennessee Supreme Court held that an employer in a worker's compensation settlement could not obtain 60.02(5) relief when a court subsequently construed a statute more favorably to the employer. 18 S.W.3d 621, 624-25 (Tenn. 2000). The court relied in part on the employer's failure to appeal the initial judgment. *Id.* at 625. Ultimately, it concluded that the trial court's grant of relief based on the mutual error of law had been an abuse of discretion. *Id.* "Rule 60 is not a substitute for appeal and motions under the rule have been denied when made to avoid a party's decision to settle the litigation or forego an appeal." *Henderson*, 2011 WL 683905, at *4 (quoting 11 Charles A. Wright et al., Fed. Prac. & Proc. Civ., § 2851 (2d ed. 1987)); *see Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) (noting the "fact that Rule 60(b)(6) motions are not substitutes for timely appeals"); *Kocher v. Dow Chem. Co.*, 132 F.3d 1225,

- 23 -

1231 (8th Cir. 1997) ("Rule 60(b)(6) cannot serve as a substitute for an ordinary appeal, even where a party did not receive timely notice of the judgment against her.").

Furthermore, in *Banks v. Dement Const. Co., Inc.*, the Tennessee Supreme Court addressed circumstances in which a complaint was dismissed without prejudice when the plaintiff did not timely respond to discovery. 817 S.W.2d 16, 18-19 (Tenn. 1991). The plaintiff was unable to refile within the limitations period but then was granted Rule 60.02(5) relief. The Tennessee Supreme Court found an abuse of discretion and reversed, concluding, "The trial judge did not have the power to extend this statutory time of limitation by the means employed, regardless of any prior mistaken intention." *Id.* at 18. The court reached that conclusion because the application of the Rule would relieve the party of the party's own free, deliberate, and calculated choices. *Id.* at 19.

In this case, the Plaintiffs chose to forgo an appeal. At the time Mosby moved for summary judgment, Plaintiffs were aware that Mosby did not give prior written consent for the assignment but that Mosby had subsequently approved an assignment to Hidden Valley in writing. They were also presumably aware of the damage each entity suffered as a result of the failure to close on the real estate. We note that the parties have represented to the trial court that specific performance remains a viable remedy. The Plaintiffs argue that it was not until the common area was conveyed to a third party that the importance of the damages, and the assignment of damages to a particular party, became apparent. Nevertheless, we conclude that the facts here do not rise to the extraordinary circumstances required by the Rule. "To obtain relief under Rule 60.02, the moving party must describe the basis of relief with specificity . . . and establish by clear and convincing evidence that [the party] is entitled to relief." *Hussey v. Woods*, 538 S.W.3d 476, 483 (Tenn. 2017) (citations omitted). The burden is on the moving party. *Id.* at 486. Here, Hidden Valley and Oldsmith chose not to appeal or to file a Rule 59.04 motion challenging the certification as a final judgment. Additionally, in their brief, the Plaintiffs acknowledge that they chose not to appeal because "there was *no reason* to appeal at that time because Oldsmith and Hidden Valley were only seeking specific performance." In short, reasonable minds could only determine that Oldsmith and Hidden Valley have not met their burden to show by clear and convincing evidence that the choice to forgo appeal was not a free, deliberate, and calculated choice. Accordingly, Rule 60.02 relief is unavailable.[9]

### C. Effect of Error

---

[9] Concluding that Rule 60.02(5) relief is unavailable because of the Plaintiffs' deliberate decision to forgo appeal, we do not consider whether the motion was made in a reasonable time. *See Hussey*, 538 S.W.3d at 485-87 ("A motion under the catch-all provision of subsection (5) filed more than a year after final judgment is generally untimely unless extraordinary circumstances excuse the party's failure to seek relief sooner."); *Day v. Day*, 931 S.W.2d 936, 939-40 (Tenn. Ct. App. 1996) (concluding that a motion filed 14 months after the judgment, after many proceedings in which the same issue could have been raised, was not in a reasonable time).

Given that it was error to reinstate Hidden Valley as a party, Mosby asserts that it is entitled to a new trial. Mosby also asserts that it was prejudiced because it had already presented proof and because it had insufficient time to prepare its own damages expert. Mosby's claim to a new trial is also premised on the fact that Hidden Valley introduced proof of damages, which Mosby asserts was prejudicial. According to Mosby, admission of the evidence was not harmless because the trial court awarded $12.2 million dollars in damages. The Plaintiffs respond that the court did not err in its ruling on the continuance to permit expert testimony, that any error in proof was harmless, and that no damages were awarded.

### 1. Time to Prepare an Expert

Essentially, Mosby argues that it was prejudiced by not being permitted further time to prepare rebuttal evidence regarding damages. The court entered an order reinstating Hidden Valley as a plaintiff on May 18, 2022. Mosby sought a continuance. The trial court determined that it would proceed with the trial dates set on June 1-2, 2022, for Mosby to present proof of its counter-claims, but that it would hold the proof open to allow Mosby more time to address the damages proof introduced by Hidden Valley. The court allowed further proof on July 13-14, 2022.

"Trial courts have broad discretion over the course and conduct of trials." *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003). Accordingly, the decision to grant a continuance is one entrusted to the trial court's discretion. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). Such a determination will be reversed only upon the showing of an abuse of discretion or clear prejudicial error. *Nagarajan*, 151 S.W.3d at 172. "Factors relevant to the trial court's decision include: '(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.'" *Howell v. Ryerkerk*, 372 S.W.3d 576, 581 (Tenn. Ct. App. 2012) (quoting *Nagarajan*, 151 S.W.3d at 172).

Here, the court granted a continuance of approximately six weeks to permit Mosby to address Hidden Valley's claimed damages, which were first offered into proof in December 2021. The trial court permitted additional discovery to take place prior to the remaining days of trial. The judge noted that he wished to complete proof before his imminent retirement in August.

The trial court considered the relevant factors. It found the length of time the proceeding had been pending weighed against a continuance. The complaint was filed in 2019, and several days of trial were completed in December 2021. The trial judge was retiring in the fall and wished to complete the proof in order to rule on the case prior to his retirement. The court found that the reason for and diligence in seeking a continuance

weighed in favor of a continuance, as Mosby sought the continuance in order to have time to procure an expert on damages, and it sought the continuance promptly after the reinstatement of Hidden Valley. Regarding prejudice, Mosby alleged that its trial strategy would have been different had it known Hidden Valley was a party. The court determined it would hear proof on the previously scheduled trial dates but would permit Mosby a period of time to engage an expert and would allow further proof.

Mosby proposed completing the additional discovery within 45 days. Mosby's counsel specifically proposed that Mosby "would be available anytime after July 14." The court noted that it had a busy schedule but that a case set on the 13, 14, and 15 had just settled. Mosby agreed that that sounded "like the best solution." After the June trial dates, the court entered an order permitting further discovery, including additional depositions, allowing Mosby to engage an expert, and scheduling trial for July 13th and 14th. Accordingly, Mosby received a short continuance. It did not file any further requests for continuance.

Mosby sought and was granted a continuance, and it actually suggested one of the dates on which trial was continued. Mosby did not seek a further continuance. Insofar as Mosby asserts an abuse of discretion related to the granting of a six-week continuance, we discern none. Any claim that the trial court should have sua sponte granted additional time for the preparation of an expert is waived and devoid of merit. *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court."). Accordingly, Mosby has not shown that the introduction of Hidden Valley's damages testimony was prejudicial based on the timing of the trial. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

## 2. Inadmissible Evidence of Damages

Mosby further argues that the introduction of the evidence of Hidden Valley's damages was so prejudicial, in and of itself, that Mosby is entitled to a new trial. With this argument, Mosby asserts the trial court awarded the Plaintiffs $12.2 million in damages as a result of the evidence from Hidden Valley. The Plaintiffs respond that if the evidence was admitted in error, the remedy would be to affirm specific performance and delineate the appropriate proof for future proceedings. They also note that the court did not award damages and argue that the damages could be ascribed to either Oldsmith or Hidden Valley.

Mosby argues that the damages proof was inadmissible because it pertained to a party which should not have been before the court. In order to be admissible, evidence must first be relevant. Tenn. R. Evid. 402. Relevant evidence is "evidence having any

- 26 -

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403. Insofar as Hidden Valley presented evidence regarding its own losses, we agree that the evidence was irrelevant to the issues at trial because Hidden Valley had been dismissed and its reinstatement as a party was improper. *See Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 540 n.9 (Tenn. 2008) (a defendant cannot be punished for injury to nonparties, although such proof may be relevant to demonstrate reprehensibility of conduct); *see also Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007) (a punitive damages award for harm to a nonparty would amount to a due process violation).

Mosby cites to four cases it contends support vacating the entire order based on erroneous admission of evidence, but a reading of the cited cases reveals that none of Mosby's authority supports its proposed relief. Mosby cites *King v. General Motors Corp.* for the proposition that erroneous introduction of evidence regarding damages requires a new trial. No. M2004-00616-COA-R3-CV, 2005 WL 3508016, at *4 (Tenn. Ct. App. Dec. 22, 2005). However, that decision did not reverse the jury's finding as to liability, but instead merely remanded for a new trial on the portion of the damages attributable to two specific categories of damages: lost earning capacity and future medical expenses. *Id.* at *4, 6. Likewise, in the cited case of *Cutshall v. Gulf Oil Corp.*, the remand was limited to a new trial on damages for one of the plaintiffs due to the speculative nature of the damages proof. No. CA 131, 1990 WL 12082, at *4 (Tenn. Ct. App. Feb. 15, 1990); *see Am. Bldgs. Co. v. DBH Attachments, Inc.*, 676 S.W.2d 558, 563-66 (Tenn. Ct. App. 1984) (after a remand addressing damages only, the court reversed parts of damages award and remitted part due to a failure of certainty in the proof); *Simmons v. O'Charley's, Inc.*, 914 S.W.2d 895, 903 (Tenn. Ct. App. 1995) (vacating judgment in a trial for damages only based in part on an erroneous evidentiary determination).

Mosby has provided no authority for the proposition that the damages evidence, which was relevant mostly to a party that we have concluded was erroneously reinstated, requires a new trial on the issue of liability. We observe that Mosby's assertion that the admission of the evidence "resulted in an award of over $12.2 [m]illion in damages to Hidden Valley"[10] is an inaccurate and unreasonable reading of the trial court's order. In fact, the trial court awarded specific performance of the contract to the Plaintiffs.

---

[10] In the section addressing Mosby's argument on consequential damages below, we conclude that the trial court did not award damages. However, we note here that the Plaintiffs are mistaken in their argument that proof established that "the buyer," rather than Hidden Valley, would suffer $12.2 million in damages. Mr. Spangler's proof was tied to the amount he testified it would cost Hidden Valley to construct each home and the amount he testified Hidden Valley's team would be able to realize in each sale, given the market conditions. There was no proof that the costs would not vary if Oldsmith were to use its own contractors or real estate professionals or if another company were to undertake the project.

### 3. Erroneously Admitted Party

Although we are not persuaded by Mosby that the erroneous reinstatement of Hidden Valley requires reversal of the judgment of specific performance, we briefly address the effect of the erroneous reinstatement. Having concluded that the trial court erred in setting aside the Rule 54.02 dismissal, we have determined that the dismissal order remains in force. Accordingly, Hidden Valley is not a plaintiff in this case, and it is not entitled to any damages for breach of contract. The trial court ordered Mosby to perform under the contract. The court found that if Mosby did not perform, it would consider a civil contempt petition, and it stated that "the Court will award the Plaintiffs damages in the amount of $12,211,075." Given that Hidden Valley was reinstated in error, this amount is not a proper measure of damages sustained by Oldsmith. Accordingly, insofar as the order expressed the trial court's intention of assigning damages of $12,211,075 in the form of civil contempt, it is vacated.

We note that the court ordered specific performance, but it at least in part contemplated the parties would perform under a modified version of the contract, to wit, one in which easements replace ownership of the Lot 3 common area. Mr. Olderman testified that the parties had agreed on the terms of the easements. Neither party has argued that the trial court's order of specific performance is in any way ambiguous, and accordingly, we do not address any potential difficulties with effecting the order. Under the order, Mosby must perform the duties allocated to it under the contract.

### IV. Material Breach

Mosby next asserts that because the trial court's initial order determined there was no prior written assignment of the contract, Oldsmith is collaterally estopped from relitigating the issue. Mosby then makes a leap to assert that if Oldsmith cannot show a prior written consent, it was the first to be in material breach of the contract, arguing that the language of the contract demonstrated the materiality of the non-assignment clause.

Mosby refers to the trial court's original dismissal of Hidden Valley, in which it found that Mosby "did not provide prior written consent, or written consent at all," for the assignment.[11] Under the doctrine of collateral estoppel, Mosby asserts that this finding precludes Oldsmith from arguing Mosby consented to the assignment. Collateral estoppel "is a court-made doctrine that bars the same parties from relitigating in a second suit issues that were raised and determined in a prior suit." *White v. Bradley Cnty. Gov't*, 639 S.W.3d

---

[11] The trial court had before it Mr. Knapp's July 8th email stating that the assignment "looked good" to him and would be approved barring any issues from Mr. Hale. We note, however, that the subsequent emails with more explicit approval were in fact sent to Oldsmith's counsel and were presumably available to the Plaintiffs at the time of summary judgment.

568, 579 (Tenn. Ct. App. 2021). It applies to both factual and legal determinations. *Id.* "Whether collateral estoppel applies to a particular set of facts is a question of law." *Id.* at 577. "Moreover, in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment." *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009). Accordingly, statements of dicta "will not be given preclusive effect." *Id.*

The trial court's dismissal was based on its determination that Mosby did not give approval as required under the explicit terms of the contract. That is manifestly supported by the record: Mosby did not give prior approval of the March and May 2019 assignments, and though aware of future assignment to Hidden Valley, did not know that the assignments had actually already been executed until after the lawsuit was initiated, although the contract required notice and prior written approval. While the trial court's statement that Mosby never approved of the assignment is not supported by the proof at trial, it also appears to be dictum because it is not necessary to the finding that the terms of the contract were not followed, which was the basis for the trial court's order. We note that the phrasing itself makes it akin to a parenthetical insertion. In any event, the trial court's finding regarding breach appears to have been premised on an absence of materiality in any breach of the assignment clause.

Mosby, relying mainly on the language of the contract, asserts that executing the assignments without its prior approval was a material breach. Mosby does not engage with the trial court's subsequent findings regarding the assignment issue. The court found that Mosby ultimately consented to the assignment to Hidden Valley. It found that the purpose of the assignment was to give Mosby notice of the entity it was contracting with, and that this purpose had been accomplished because Mosby knew of Mr. Spangler's involvement for many months, drafted documents reflecting that Hidden Valley would be the buyer, and explicitly approved of assigning the contract, albeit after the assignments were executed. The court appears to have concluded that any breach was not material.[12] The record amply supports this conclusion.

A party who commits the first uncured material breach of a contract may not recover for the other party's subsequent material breach. *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 812 (Tenn. Ct. App. 2009). To relieve a party of further performance, the initial breach must be material. *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 423 (Tenn. Ct. App. 2016). "If the breach of contract 'was slight or minor, as opposed to material or substantial, the nonbreaching party is not relieved of his or her duty of performance, although he or she may recover damages for the breach.'" *Id.* (quoting *Anil Constr. Inc. v. McCollum*, No.

---

[12] We note that Mosby does not on appeal contest the validity of the assignment as binding between Oldsmith and Hidden Valley or brief that issue.

- 29 -

W2014-01979-COA-R3-CV, 2015 WL 4274109, at *12 (Tenn. Ct. App. July 15, 2015)).
Tennessee courts have analyzed the following factors in determining if a breach is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Tenn. Homes v. Welch*, 664 S.W.3d 1, 9 (Tenn. Ct. App. 2022) (quoting Restatement (Second) of Contracts § 241 (1981)).

The contract provided that it could not be assigned without the seller's prior written consent, and Oldsmith did not obtain prior written consent to the March and May assignments. Accordingly, it was in breach. However, the evidence introduced at trial shows that the trial court did not err in concluding such a breach was not material.

Oldsmith informed Mosby by June that it intended to assign the contract to Hidden Valley at closing. Mosby did not object to such an assignment. Mosby did ask for specific alterations to provide "continued liability of the Purchaser and the express assumption by Hidden Valley of the Purchaser's rights and obligations." The record demonstrates that the parties intended for the edited assignment document to be signed at closing. At trial, Mr. Finlay initially testified that the identity of the buyer was important to Mosby and that the assignment language was inserted so that Mosby would know who the decision-maker was on the other side. Mr. Finlay later acknowledged that "at the closing table, and at that point, when the money shows up, I don't really care as much who it goes to." He reiterated that once the matter came to closing, he had no concern over who the purchaser was at the closing table. He agreed that the assignment was not the reason the parties did not close.

Accordingly, Mosby was deprived of no benefit, Oldsmith attempted to cure the prior unapproved assignment by seeking Mosby's approval for an assignment to be executed at closing, and Oldsmith would suffer severe forfeiture despite the fact that Mr. Finlay acknowledged that he was indifferent to the party at the closing table. We agree

- 30 -

with the trial court that the breach was not material.  The parties do not dispute that Mosby breached the contract by failing to perform its obligations thereunder by mis-platting the property and not completing tasks it had undertaken.  Accordingly, we affirm this portion of the trial court's judgment.

## V. Civil Contempt Damages

Mosby contends that the trial court awarded the Plaintiffs consequential damages in violation of the contract via its ruling on civil contempt.  The Plaintiffs contend that this court cannot review the question of contempt damages because the issue is not ripe.

As a foundational matter, we agree that the contract limited the buyer's damages.  The contract here provided:

> If Seller defaults in its obligation to consummate the transactions contemplated by this Agreement, Purchaser's sole remedies shall be either (a) to terminate this Agreement, in which event all of the Earnest Money shall be returned to Purchaser by the Escrow Agent, whereupon neither Party hereto shall have any further rights or obligations hereunder except for those provisions that survive the termination of this Agreement, or (b) to bring a suit for specific performance.  Purchaser hereby waives any other rights or remedies for breach of any obligation to be performed at or before Closing.  The limitation of damages set forth in this Section 9.2 shall not apply to any indemnities, covenants or obligations of Seller which expressly survive (or are to be performed after) either the termination of this Agreement or Closing, for which Purchaser shall be entitled to all rights and remedies available at law or in equity.

The trial court ultimately awarded specific performance of the contract, giving Mosby 90 days to perform.  On appeal, Mosby objects to the following language: "If Mosby fails to perform, the Court will entertain a petition for civil contempt.  Upon hearing the petition, the Court will not relitigate the issue of damages, having found in this Memorandum and Order that the Plaintiffs have sustained damages in the amount of $12,211,075."

We note that the order contains no monetary judgment against Mosby.  Mosby has not failed to perform, and it has not been found in contempt.  Accordingly, insofar as Mosby is attempting to appeal a future civil contempt judgment and associated penalty, there is no judgment from which to appeal. *See City of New Johnsonville v. Handley*, No. M2003-00549-COA-R3-CV, 2005 WL 1981810, at *18 n.26 (Tenn. Ct. App. Aug. 16, 2005) ("Since the trial court never entered a judgment on the City's motion, we have no judgment on this issue to review on appeal."); *Thompson v. Dickerson*, No. 02A01-9702-CV-00034, 1997 WL 437228, at *3 (Tenn. Ct. App. Aug. 1, 1997) ("We will not entertain the defendants' argument because the trial court has not entered a final judgment on this

issue.").

In the case at bar, the order seems to indicate that, should the trial court deem Mosby in contempt, it would award sanctions in the amount of damages it found the Plaintiffs suffered at trial. We have determined that Hidden Valley was reinstated in error and that the trial court's rulings as to damages are accordingly not an accurate reflection of the damages suffered by Oldsmith. The portion of the trial court's order valuing damages at $12,211,075 is vacated. As noted above, any future findings of contempt or sanctions imposed are not before us.

## VI. Attorney's Fees on Appeal

The Plaintiffs request attorney's fees on appeal under the contract, asserting that they are the prevailing party. Mosby responds that Oldsmith is not entitled to attorney's fees on appeal and that a determination regarding attorney's fees would best be suited for the trial court. Mosby does not challenge the imposition of attorney's fees below.

The contract provides:

11.8 Attorneys' Fees. In any action or proceeding to enforce this Agreement, upon final judgment the court shall award to a prevailing party, fees and other expenses incurred by that party in connection with that proceeding, unless the court finds that the position of the nonprevailing party or Parties was substantially justified or that special circumstances make an award unjust. For purposes of this Agreement, "prevailing party" shall be defined as any party who wins more than fifty percent (50%) of its last written settlement offer to another party or parties prior to final adjudication of the claim, dispute, or controversy.

We agree with Mosby that the attorney's fee provision in the contract is particularly fact-dependent in its definition of prevailing party, and as such, not suitable for initial appellate determination. *See* Tenn. Code Ann. § 16-4-108(a)(1) ("The jurisdiction of the court of appeals is appellate only . . . ."); *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998); *Lee v. Peavy*, No. M2024-00890-COA-R3-CV, 2025 WL 733446, at *2 (Tenn. Ct. App. Mar. 7, 2025), *perm. app. denied* (Tenn. June 23, 2025) (this court cannot in general consider attempts to adduce proof, act as the initial trier-in-fact, or consider new evidence). We note in this respect that Mosby has prevailed on certain of its appellate issues and that whether the party was "substantially justified" or whether "special circumstances make an award unjust" are part of the consideration. Accordingly, we remand for a determination of whether any party was a "prevailing party" on appeal within the meaning of the contract and, if so, whether the nonprevailing party or parties was substantially justified or that special circumstances make an award unjust. If appropriate, the trial court will also determine the fees and other expenses incurred in connection with this appeal.

## VII. Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and vacate in part the judgment of the Chancery Court for Williamson County. Costs of the appeal are taxed equally between the parties, for which execution may issue if necessary.


s/ Jeffrey Usman
JEFFREY USMAN, JUDGE